Olu K. Orange, Esq. [S. B. #213653]
ORANGE LAW OFFICES, P.C.
3435 Wilshire Blvd., Suite 2910
Los Angeles, California 90010
Telephone: (213) 736-9900 / Facsimile: (213) 417-8800
Email: orangelawoffices@att.net

Dan Stormer, Esq. [S.B. #101967]
Morgan E. Ricketts, Esq. [S.B. #268892]
Bina Ahmad, Esq. [S.B. #329387]
Kate McFarlane, Esq. [S.B. #340706]
HADSELL STORMER RENICK & DAI LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9600 / Facsimile: (626) 577-7079
Emails: dstormer@hadsellstormer.com / mricketts@hadsellstormer.com
         bahmad@hadsellstormer.com / kmcfarlane@hadsellstormer.com

*Attorneys for Plaintiffs M.S. and I.H.*

[Counsel cont. on next page]

**DISCOVERY MATTER**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.S., a minor, by and through his guardian *ad litem*, Jessica DeVita; and I.H., a minor, by and through her guardian *ad litem*, Candace Hernandez,<br><br>Plaintiffs,<br><br>v.<br><br>OLIVER ANGUS, MICHAEL ANGUS, JAMIE ANGUS, MARAE CRUCE, GREGORY PITTS, ANTONIO SHELTON, SANTA MONICA MALIBU UNIFIED SCHOOL DISTRICT and Does 1 through 10,<br><br>Defendants. | Case No.: 2:23-CV-09957-SRM-MAR<br><br>[Assigned to the Honorable Serena R. Murillo – Courtroom 5D]<br><br>**JOINT STIPULATION RE PLAINTIFFS' MOTION TO COMPEL IMEs OF DEFENDANTS OLIVER AND JAMIE ANGUS**<br><br>**[REDACTED VERSION OF DOCUMENTS PROPOSED TO BE FILED UNDER SEAL]**<br><br>DATE:     October 29, 2025<br>TIME:     11:00 a.m.<br>CRTRM:  790 (Roybal)<br><br>[*Filed concurrently herewith: 1) Ntc of Mtn for Jt Stip; 2) Ricketts Decl & Exs; 3) Rodriguez Decl & Exs; and 4) [Prop] Order*]<br><br>**MATTER FOR DETERMINATION BY THE HONORABLE MARGO A. ROCCONI**<br><br>Complaint filed:   November 22, 2023<br>Trial Date:          April 21, 2026 |

JOINT STIP RE PLTFS' MTN TO COMPEL
INDEPENDENT MEDICAL EXAMINATIONS

[Counsel cont. from previous page]

Rosa K. Hirji (SBN 204722)
*rosa@rkhlawoffice.com*
Alexander F. Rodriguez (SBN 322700)
*alex@rkhlawoffice.com*
Ariel S. Harman-Holmes (SBN 315234)
ariel@rkhlawoffice.com
**HIRJI, CHAU & RODRIGUEZ, LLP**
5173 Overland Avenue
Culver City, CA 90230
Tel: (310) 391-0330 / Fax: (310) 943-0311

*Attorneys for Defendants* Oliver Angus, Michael Angus, and Jamie Angus

JOINT STIP RE PLTFS' MTN TO COMPEL
INDEPENDENT MEDICAL EXAMINATIONS

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION AND FACTUAL BACKGROUND ....................................... 1

A.    Plaintiffs' Statement ..................................................................................... 1

II.   ARGUMENTS ............................................................................................... 16

PLAINTIFFS' POSITION ........................................................................................ 16

Rule 35(a) Applies Equally to Defendants .............................................................. 16

The Mental Conditions of the Defendants Are "In Controversy ............................. 16

　　　1.    Regarding Oliver Angus ................................................................. 17

　　　2.    Regarding Jamie Angus ................................................................. 18

Good Cause Exists for the Examinations Under Rule 35 ........................................ 19

　　　1.    Regarding Oliver Angus ................................................................. 20

　　　2.    Regarding Jamie Angus ................................................................. 21

Defendants Will Not Be Prejudiced; Plaintiffs Will Be Prejudiced Absent
Examinations ........................................................................................................... 21

Proposed Examination ............................................................................................. 21

Protective Provisions ............................................................................................... 23

III.   CONCLUSION ............................................................................................... 24

DEFENDANTS' POSITION ..................................................................................... 24

I.    INTRODUCTION .......................................................................................... 24

II.   PROCEDURAL BACKGROUND ................................................................. 26

III.   FACTUAL BACKGROUND ......................................................................... 26

IV.   LEGAL STANDARD ..................................................................................... 28

V.    ARGUMENT ................................................................................................. 29

/ / /

JOINT STIP RE PLTFS' MTN TO COMPEL
INDEX PENDENT MEDICAL EXAMINATIONS         -i-

A.    Defendants O.A. And J.A. Mental Condition Is Not
      'In Controversy'...............................................................................29

B.    Plaintiffs Have Failed To Demonstrate 'Good Cause' For
      The Examinations Prayed For By The Plaintiffs......................................32

VI.   CONCLUSION .................................................................................35

# I.    INTRODUCTION AND FACTUAL BACKGROUND

## A.    Plaintiffs' Statement

Plaintiffs seek independent medical examinations ("IMEs") of Defendants Oliver Angus and Jamie Angus pursuant to Federal Rule of Civil Procedure 35(a).

The instant lawsuit seeks to remedy harm suffered by two young people, M.S. and I.H., who have filed suit based upon suffering violent physical, emotional and sexual abuse on and off the campus of Santa Monica High School by one of their former fellow students in the Special Education program, Oliver Angus – an adult who remains under a court conservatorship overseen by his parents, including Defendant Jamie Angus, who reside with him and supervises his daily care, counseling, and therapy.  Defendant Jamie Angus is herself a named defendant in this action and has acted as gatekeeper to Oliver Angus's mental health care and services throughout the events at issue.

Plaintiffs allege that Oliver Angus engaged in a protracted course of violent conduct toward them to gratify himself and to coerce them into sexual situations and acts – and silence. Plaintiffs further allege that this violent and sexual conduct was perpetrated by Oliver Angus at Santa Monica High School, should have been prevented by school personnel, and was the subject of complaints to school administrators and personnel. Plaintiffs also allege Defendants Michael Angus and Jamie Angus, adults and parents of Oliver Angus, knew of his violent and sexually abusive acts and tendencies but did nothing to stop him – and in fact enabled him further.

In November 2022, Plaintiff I.H., then a minor and a person diagnosed with a learning disability, reported to Defendant Santa Monica-Malibu Unified School District that she had been bitten and sexually abused since age 11 by a fellow classmate, Defendant Oliver Angus. Ricketts Decl. ¶ 2. On May 12, 2023, Plaintiff M.S., another minor in the same school diagnosed with autism, disclosed to a trusted schoolteacher that his only "friend," Oliver Angus, had been sexually and otherwise abusing him at school and elsewhere. Ricketts Decl. ¶ 3. Prior to either Plaintiffs' disclosures to the

Schol District Defendants, numerous parents had notified Defendant Jamie and/or Michael Angus over the years that Oliver Angus had physically hurt their children, and that they did not want their children around Oliver. Ricketts Decl. ¶ 4.

Defendant Oliver Angus

¶ 5.

*Id.*

Despite discovery requests for all such documentation (which are the subject of a pending motion to compel), Defendant Oliver Angus has produced only

¶ 6.

¶ 6.,

JOINT STIP RE PLTFS' MTN TO COMPEL
INDEPENDENT MEDICAL EXAMINATIONS                    -2-



At Sana Monica High School, there are four "tracks" as far as academics, three of which are diploma tracks. Rickets Decl. ¶ 7. The first track is general education, delivered by a general education ("GenEd") teacher. *Id*. The second track is "Collab", which is co-taught by one GenEd and one Special Education ("SpEd") teacher. *Id*. The third track is SAI, or Specialized Academic Instruction, for high functioning special education students. All of these tracks are diploma-earning tracks. *Id*. The fourth track is SAI Intensive, for lower functioning special education students. *Id*.

*Id.*

Oliver Angus is a prolific email and social media user, creating numerous documents showing his thought processes at any given time, many of which I have reviewed. Rickets Decl. ¶ 9, Exh. 3. He uses appropriate spelling, punctuation, capitalization, and grammar (with typical exceptions seen in most people's texted communications). *Id.* Further, the substance of his writings is coherent and in some cases demonstrates complex, abstract ideas and thinking. *Id.* His writings also show that he is able to logically and accurately relate historical events from memory, tell stories, assign cause-and-effect, understand implied meanings, make moral and aesthetic judgments, make arguments, and justify his reasoning. *Id.* Oliver's writings contrast sharply with those of Plaintiffs, whose writings are very short and reveal frequent confusion when confronted with nuance, sarcasm or bullying; abstract concepts; unanticipated statements; or deviations from what they understand is "right" or

JOINT STIP RE PLTFS' MTN TO COMPEL INDEPENDENT MEDICAL EXAMINATIONS                    -4-

"supposed" to be done. *Id.* In his communications with them, Defendant Oliver Angus frequently mocked Plaintiffs for not being as smart as he is (to I.H.: "How are you in high school when you barely put punctuation in sentences and barely know the right word?" and "Wow, you little Ms. Doesn't-Know-To-Spell… If you want to be a writer like me, learn how to spell"; to M.S.: "How are you in middle school but you don't know how to spell principal?"). *Id.*

Defendant Oliver Angus has made several social media posts and sent emails that show an understanding of what is right and wrong, the ability to consider what others may be thinking and feeling in circumstances he has not personally experienced, and the ability to plan to escape accountability for doing wrong to others. Ricketts Decl. ¶ 10, Exh. 4.

Defendant Oliver Angus previously voluntarily answered questions put to him by a school official and a police detective without incident, without claiming he could not remember something, and without giving demonstrably false answers. Ricketts Decl. ¶ 11.

Defendant Oliver Angus has told Plaintiff M.S. explicitly that he has a condition relating to his energy levels, but that he can't die from it. Ricketts Decl. ¶ 12.



¶ 13, Exh. 6.

14, Exh. 7.



*Id.*

The School District Oliver has attended from 5th to 12th grade has been asked in this litigation for all documents relating to Oliver Angus, but their production includes

JOINT STIP RE PLTFS' MTN TO COMPEL
INDEPENDENT MEDICAL EXAMINATIONS

-6-

zero documents evidencing a single visit to the school nurse by Oliver. Ricketts Decl. ¶ 17.

According to Plaintiff I.H. at deposition, he used to play tag with the other children in their class, and Oliver was "really good at tag" because he could outrun all the other kids. Ricketts Decl. ¶ 18.

According to his karate instructor, he recently took and passed a three hour test and obtained his green belt in karate. Ricketts Decl. ¶ 19, Exh. 8.

Defendant Oliver Angus has played in a soccer league. Ricketts Decl. ¶ 20, Exh. 9. In the league, Oliver Angus was a "buddy" rather than a player, meaning he was paired with a special needs child to assist them, one-to-one, in playing soccer in the league. *Id*. The special needs child that Oliver Angus was paired with, in this league, was Plaintiff M.S. *Id*.

Publicly posted videos depict Defendant Angus (a) moving a heavy punching bag by himself; (b) swinging nunchucks rapidly; and (c) jumping over mats at a karate studio. Ricketts Decl. ¶ 21, Exhs. 10, 11, and 12.

On February 11, 2025, Plaintiffs issued a deposition notice to Oliver Angus, setting his deposition for February 27, 2025. Ricketts Decl. ¶ 23. On February 19, 2025, Family Defendants' counsel asserted that Oliver was not available February 27, and provided dates in late March instead. *Id*. On February 24, 2025, Family Defendants met and conferred with counsel for Plaintiffs and provided a date of March 12 for Oliver's deposition. *Id*. They also requested accommodations: breaks every *thirty minutes* and a two day break for every one day of testimony. *Id*. On February 26, 2025, Plaintiffs

canceled the February 27 deposition of Oliver Angus and re-noticed it for March 12, 2025. *Id*.

On March 6, 2025, Plaintiffs' counsel and Family Defendants' counsel met and conferred telephonically on the various accommodations the Family Defendants wished to procure for Oliver Angus in exchange for proceeding with the deposition. Ricketts Decl. ¶ 24. The parties could not reach agreement. *Id*.

On March 12, 2025, Oliver Angus failed to appear for his deposition, and a certificate of non-appearance was taken. Ricketts Decl. ¶ 25, Exh. 13.

Thereafter, the parties met and conferred and Family Defendants offered the date of August 5, 2025 for Oliver's deposition. Ricketts Decl. ¶ 26. On June 30, 2025, the District Defendants noticed Oliver's deposition for August 5, 2025. *Id*. On July 3, 2025, Plaintiffs cross-noticed his deposition, also for August 5, 2025. *Id*. This date was agreed to by Family Defendants' counsel. *Id*.

On July 14, 2025, Family Defendants stated that Oliver would be on a pre-planned vacation on August 5, 2025, and would not appear. Ricketts Decl. ¶ 27, Exhs. 14, 15. They said that the earliest he could appear was *twenty-one days later*, on August 26, 27, or 28, but in response to Plaintiffs' question whether he would actually appear on any of those days, refused to commit to any appearance at all. *Id*.

Ultimately, Plaintiffs renoticed the deposition for August 26, 2025. Ricketts Decl. ¶ 28.

On August 22, 2025, Family Defendants wrote to Plaintiffs counsel, noting that Oliver would need to be deposed near a hospital and that a reasonable amount of time was needed to identify the location. Ricketts Decl. ¶ 29, Exh. 16. Family Defendants requested that Plaintiffs take Oliver's August 26 deposition date off-calendar to permit them time to do so, and represented that they would be providing dates in early September, 2025. *Id*.

On August 25, 2025, Plaintiffs agreed: "Early September sounds good. Upon your representation as to that timeframe, the August 26 dep of Oliver Angus is off-

calendar and will be re-noticed." Ricketts Decl. ¶ 30.

On August 27, 2025, Family Defendants notified Plaintiffs' counsel: "With great difficulty, I have managed to find a date that works for Oliver's physicians, co-defendants and his parents." Ricketts Decl. ¶ 31. Family Defendants identified September 23 at 11am at the offices of Oliver's doctor. *Id*.

On August 28, 2025, Family Defendants took the position that Oliver's deposition should not proceed until they had an opportunity to appeal the Magistrate Judge's denial of their motion for protective order. Ricketts Decl. ¶ 32.

On September 2, Family Defendants again confirmed that they would not produce Oliver until they obtained a ruling on their Rule 72 motion challenging the denial of the protective order, and took the position that requiring Oliver to participate in two sessions of his deposition would "only increase the risk to his health and life." Ricketts Decl. ¶ 33.

Counsel for Plaintiffs spoke with counsel for Family Defendants about their ex parte on Monday, September 15, 2025 by phone. Ricketts Decl. ¶ 34. Counsel for Plaintiff asked whether Defendant Oliver Angus could commit to any date for his deposition after October 8, the date Defendants anticipate obtaining a ruling on their Rule 72 motion, but before October 24, the discovery cut-off. *Id*. Counsel for Family Defendants confirmed that there were no dates in that timeframe on which Oliver would appear. *Id*. Previously, when Counsel discussed the possibility of stipulating to a trial continuance, Counsel for Plaintiffs asked to reserve a date in November or even December for Oliver's deposition, given the difficulties in scheduling his doctor's presence alongside counsel for three firms. *Id*. Counsel for Family Defendants declined to make this effort, stating that it was costly. *Id*.

Now that Plaintiffs have noticed Jamie Angus to appear for deposition on October 17, 2025, Family Defendants have requested accommodations for Jamie Angus that are similar to those requested for Oliver Angus, also citing her health. Ricketts Decl. ¶ 35, Exh. 17. These requested accommodations include: shortened sessions with

two days break between sessions; breaks "as needed"; the ability to eat and drink as needed; and that the location be close to Santa Monica or remote. *Id*. Family Defendants are aware that the office for Counsel for Plaintiffs is in Pasadena, which is, at most, a one hour drive from Santa Monica, where the Anguses live. *Id*. Oliver Angus has previously refused to appear for his agreed-upon deposition date of August 5, 2025, because of a "pre-planned family vacation", suggesting that Jamie Angus, his mother, has recently traveled voluntarily. *Id*.

Jamie Angus' mental condition is at issue because facts that have been discovered so far in this action suggest that her involvement in Oliver Angus' ██████ ███████████████████████ is highly suspect. Ricketts Decl. ¶ 36. Family Defendants have insisted that their son, who has participated in acting classes, automotive technology classes, a soccer league, swimming, and karate, not to mention graduated from high school with a diploma in four years with a 3.0+ GPA, is so ██████████ ████████████████ that he cannot be required to undergo the stress of answering questions about the alleged sexual assault of Plaintiffs at deposition. *Id*.

This begs the question of why ████████████████████████████ ████████████████████████ when lay witnesses have not been able to observe anything concrete about Oliver that suggests disability. Ricketts Decl. ¶ 37. Plaintiff I.H. and her mother have stated they have never known Oliver to have any disability at all. *Id*. Oliver's disorder was a complete surprise to Plaintiff M.S. when Oliver Angus disclosed it to him over email, stating he had a disorder that "does affect my energy" while reassuring him that he "[can't] die from it." *Id*. Further, investigation by Counsel for Plaintiffs shows that one of Oliver's teachers has stated there was nothing wrong with him, but there was something wrong with Jamie Angus – that she insisted on various accommodations that Oliver never needed as soon as she left the classroom. *Id*.

████████████████████████████████████████████████████████████

JOINT STIP RE PLTFS' MTN TO COMPEL
INDEPENDENT MEDICAL EXAMINATIONS                -11-

JOINT STIP RE PLTFS' MTN TO COMPEL
INDEPENDENT MEDICAL EXAMINATIONS

-12-

JOINT STIP RE PLTFS' MTN TO COMPEL
INDEPENDENT MEDICAL EXAMINATIONS

-13-

-14-

JOINT STIP RE PLTFS' MTN TO COMPEL
INDEPENDENT MEDICAL EXAMINATIONS



Family Defendants appear to be hiding something regarding Oliver's medical condition, while also using it as a sword and shield. However, because medical consults began before the litigation did, it seems unlikely that mere gamesmanship is at play here. Plaintiffs believe, and will argue, that Jamie Angus may suffer from factitious disorder affecting others, which has caused her to exaggerate or even fabricate symptoms in Oliver Angus for many years. Ricketts Decl. ¶ 55. The only way they can obtain the necessary evidence to prove this and undercut the Family Defendants' claims that Oliver is gravely disabled and cognitively unable to testify truthfully is to perform a mental examination of Jamie Angus and rule out, or rule in, the possibility that she may be actively contributing to Oliver's diagnosis, either knowingly or unknowingly.

/ / /

/ / /

JOINT STIP RE PLTFS' MTN TO COMPEL
INDEPENDENT MEDICAL EXAMINATIONS                -15-

## II.    ARGUMENTS

**PLAINTIFF'S POSITION**

Because Defendants have affirmatively placed their mental capacities, judgment, and psychological functioning in controversy—Oliver Angus, in part, by virtue of his conservatorship status and reported therapeutic needs, and Jamie Angus, in part, by her dual role as both defendant and conservator—Plaintiffs respectfully seek narrowly tailored Rule 35 examinations to evaluate their current mental functioning, capacity, and symptom validity. As explained below, both the "in controversy" and "good cause" requirements of Rule 35(a) are satisfied.

**Rule 35(a) Applies Equally to Defendants**

Federal Rule of Civil Produce 35(a)(1) expressly allows the court to order a "party" – plaintiff or defendant – to undergo a physical or mental examination if their condition is "in controversy" and there is "good cause." Courts have made clear the Rule 35 applies to defendants and may be used to evaluate their mental competence. *Schlagenhauf v. Holder*, 379 U.S. 104, 119 (1964) (in discussing how courts should determine whether or order a mental examination, "This is not only true as to a plaintiff, but applies equally to a defendant who asserts his mental or physical condition as a defense to a claim").

Plaintiffs have asked Defendants Oliver Angus and Jamie Angus to stipulate to independent medical examinations under Federal Rule of Civil Procedure 35. While their mental conditions are "in controversy" and "good cause" exists for the examinations under Rule 35, Defendants have not responded.

**The Mental Conditions of the Defendants Are "In Controversy"**

A mental condition is "in controversy" when it is the subject of the litigation. *Gavin v. Hilton Worldwide, Inc.*, 291 F.R.D. 161, 164 (N.D. Cal. 2013). Courts have determined that the "in controversy" requirement is satisfied where at least one of the following factors is present:

(1) a claim for intentional or negligent infliction of emotional distress;

---

JOINT STIP RE PLTFS' MTN TO COMPEL
INDEPENDENT MEDICAL EXAMINATIONS            -16-

(2) an allegation of a specific mental or psychiatric injury or disorder;

(3) a claim of unusually severe emotional distress;

(4) plaintiff's offer of expert testimony to support a claim of emotional distress; or

(5) plaintiff's concession that their mental condition is "in controversy" within the meaning of Rule 35(a). *Turner v. Imperial Stores*, 161 F.R.D. 89, 95 (S.D. Cal. 1995).

**1. Regarding Oliver Angus**

Here, Family Defendants have alleged a specific mental or psychiatric disorder under factor 2, and based thereupon, have insisted on extraordinary deposition limits (doctors present, shortened sessions, hospital adjacency) and claimed Defendant Oliver is not competent to provide deposition testimony due to his condition. (Ricketts Decl. ¶¶ 23-35, Exhs. 13, 16-17.)

The record further shows material inconsistency between claimed limited functioning and Oliver's actual functioning: ███████████████ █████████████████████ participation in **karate**, **soccer**, and other activities, and videos depicting vigorous physical exertion. (Ricketts Decl. ¶¶ 8, 19–21, Exhs. 2, 8–12.) His ████████████████████ ███████████████████████ (Exh. 1, DEFT006070–71.) Meanwhile, Defendants have produced only a ████████████████████ ████████████████████████ (Ricketts Decl. ¶ 6.)

On this record, Oliver's mental condition is genuinely in dispute and "in controversy." See *Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 608 (C.D. Cal. 1995) (mental condition at issue warrants IME); *Greenhorn v. Marriott Int'l, Inc.*, 216 F.R.D. 649, 652 (D. Kan. 2003) (Rule 35 exam appropriate even without express injury allegation where condition is genuinely disputed).

In addition, Plaintiffs are informed and believe—based on information subject to

a protective order in a separate state-court proceeding—that Oliver and/or Jamie may be feigning or exaggerating symptoms consistent with malingering or factitious disorder (Munchausen by proxy). Plaintiffs do **not** disclose that material here, but may seek leave for in camera/under-seal submission as needed. See *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475–76 (9th Cir. 1992); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131–33 (9th Cir. 2003).

Given Defendants' admissions, Oliver's deposition avoidance on purported medical grounds, the evidence of contra-indicated activity, and the availability of validity testing, an IME of Oliver Angus is warranted. See *Schlagenhauf*, 379 U.S. at 118–19; *Ragge*, 165 F.R.D. at 608; Ricketts Decl. ¶¶ 23–33.

**2. Regarding Jamie Angus**

Jamie Angus is both a named defendant and Oliver's conservator.

As Oliver's primary reporter of symptoms to ——Jamie's mental stability and condition, at least as it pertains to the existence and cause(s) of *Oliver's* disability and need for treatment/accommodations, is central to multiple core issues in dispute in this action: Oliver's ability and competency to testify, his responsibility for his sexual assaults, and the time when his parents first had notice of his dangerous behaviors. (Ricketts Decl. ¶¶ 14–16, 43–51, Exh. 7.)

Plaintiffs are informed and believe, and the facts discovered in this case strongly suggest, that Jamie's conduct may reflect exaggeration or fabrication of Oliver's alleged impairments (FDIA/Munchausen by proxy). Plaintiffs will seek appropriate leave if submission is required. *Beckman*, 966 F.2d at 475–76; *Foltz*, 331 F.3d at 1131–33.

Because Jamie is simultaneously a party defendant and the gatekeeper to the very medical narrative Defendants invoke in this litigation, in this specific situation her mental condition must be examined in order to fully resolve glaring questions about the validity of her son's mental condition, which is in controversy under Rule 35(a). See *Schlagenhauf*, 379 U.S. at 118–19.

**Good Cause Exists for the Examinations Under Rule 35**

Under *Schlagenhauf*, 379 U.S. at 118, a party's condition may be placed in

---

JOINT STIP RE PLTFS' MTN TO COMPEL
INDEPENDENT MEDICAL EXAMINATIONS

-19-

controversy by the opposing party upon a showing of good cause. Such good cause exists here.

Courts evaluate good cause by considering:

(1) the possibility of obtaining desired information by other means;

(2) whether plaintiff plans to prove her claim through testimony of expert witnesses;

(3) whether the desired materials are relevant; and

(4) whether plaintiff claims ongoing emotional distress."

*Ayat v. Societe Air France*, 2007 WL 1120358, at *5 (N.D. Cal. Apr. 16, 2007).

Further, Courts in this District emphasize that Rule 35 should be construed liberally to permit mental examinations where relevant and necessary:

"The Court is quite aware that when determining a Rule 35 motion, this Court is to construe Rule 35 liberally in favor of granting discovery. … Likewise, a purpose of Rule 35 is to 'level the playing field' between parties in cases in which a party's physical or mental condition is in issue. Granting a request for a psychiatric examination pursuant to Rule 35 is to preserve the equal footing of the parties to evaluate the plaintiff's mental state…. Only if no additional relevant information could be gained by an examination of [the party] should the motion for a psychiatric examination be denied."

*Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 608 (C.D. Cal. 1995) (quoting *Duncan v. Upjohn Co.*, 155 F.R.D. 23, 25 (D. Conn. 1994)).

See also *Silva v. Mercado Food Enter., Inc.*, No. 1:10-CV-02368 AWI, 2012 WL 174926, at *6 (E.D. Cal. Jan. 20, 2012) (Rule 35 should be "liberally applied" to permit discovery where relevant).

**1. Regarding Oliver Angus**

Good cause is met. The necessary, current information about Oliver's capacity, credibility, and symptom validity cannot be obtained from existing records, which are incomplete (seven years of IEP records missing; significant redactions to Dr. Boles's

report). (Ricketts Decl. ¶¶ 6, 54, Exh. 7.) Defendants' deposition delays and medical-based constraints further underscore the need for an independent assessment. (Ricketts Decl. ¶¶ 23–35.)

A forensic psychological evaluation with standardized validity/malingering measures (e.g., TOMM, MMPI-2-RF validity scales) is the only reliable method to test whether claimed impairments are genuine. *Schlagenhauf*, 379 U.S. at 118; *Ragge*, 165 F.R.D. at 608; *Silva v. Mercado Food Enter., Inc.*, 2012 WL 174926, at *6 (E.D. Cal. Jan. 20, 2012) (liberal application of Rule 35).

### 2. Regarding Jamie Angus

Good cause likewise exists to examine Jamie. The information bearing on Jamie's mental functioning, decision-making, and influence over Oliver's alleged impairments cannot be obtained from documents or lay testimony alone. *Schlagenhauf*, 379 U.S. at 118. Given her dual role as party defendant and conservator, and the timing/contents of her reports to the school and Dr. Boles, only a qualified forensic evaluation can assess whether she may be the source of Oliver's claimed disability and whether her conduct reflects exaggeration or fabrication (FDIA/Munchausen by proxy). See *Ragge*, 165 F.R.D. at 608; *Silva*, 2012 WL 174926, at *6.

**Defendants Will Not Be Prejudiced; Plaintiffs Will Be Prejudiced Absent Examinations**

The examinations will be conducted by a licensed forensic psychologist under narrowly tailored and protective conditions. Defendants face no undue prejudice. By contrast, Plaintiffs will suffer severe prejudice if denied a fair opportunity to test competency, credibility, and symptom validity—issues Defendants themselves have put at the center of this case. Good cause therefore exists to order the IMEs under Rule 35.

**Proposed Examination**

**Examiner:** Dr. Ashley W. Azcarraga, Psy.D.

**Dates:** November 10, 14, 17, or 18, 2025 (with exams potentially split across two days to accommodate health concerns).

JOINT STIP RE PLTFS' MTN TO COMPEL INDEPENDENT MEDICAL EXAMINATIONS                    -21-

**Location:** Near Defendants' residence.

**Scope/Tests** The examination shall include a history, clinical interview, mental status exam, and administration of standardized instruments that are indicated by the history and interview, which may include any of the following:

- Beck Anxiety Inventory (BAI)
- Beck Depression Inventory (BDI)
- Epworth Sleepiness Scale (ESS) / Insomnia Severity Index (ISI)
- Hare Psychopathy Checklist (PCL-R)
- Katz Index of Independence in ADL's
- Millon Behavioral Medicine Diagnostic (MBMD)
- Millon Clinical Multiaxial Inventory–IV (MCMI-IV)
- Minnesota Multiphasic Personality Inventory–2 (MMPI-2)
- Minnesota Multiphasic Personality Inventory–2–Restructured Form (MMPI-2-RF)
- Minnesota Multiphasic Personality Inventory–3 (MMPI-3)
- Personality Assessment Inventory (PAI)
- Trauma Symptom Inventory–2 (TSI-2)
- Life Events Checklist for DSM-5 (LEC-5)
- PTSD Checklist for DSM-5 (PCL-5)
- Clinician-Administered PTSD Scale for DSM-5 (CAPS-5)
- World Health Organization Disability Assessment Schedule 2.0 (WHODAS 2.0)
- Symptom Checklist–90 (SCL-90)
- Battery for Health Improvement–2 (BHI-2)
- Alcohol Use Disorders Identification Test (AUDIT)
- Alcohol Use Disorders Identification Test–Consumption (AUDIT-C)
- Drug Abuse Screening Test (DAST)
- Trauma Symptom Checklist for Adults (TSC-40)
- International Trauma Questionnaire (ITQ)
- Substance Abuse Subtle Screening Inventory–4 (SASSI-4)
- Alcohol Severity Index (ASI)
- Miller Forensic Assessment of Symptoms Test (M-FAST)
- Structured Interview of Reported Symptoms (SIRS)
- Structured Inventory of Malingered Symptomatology (SIMS)
- Validity Indicator Profile (VIP)
- Reliable Digit Span (RDS)
- Morel Emotional Numbing Test (MENT)

- Inventory of Problems–29 (IOP-29)
- Inventory of Problems–Memory (IOP-M)
- Rey 15-Item Test (Rey-15)
- Test of Memory Malingering (TOMM)
- Mini-Mental State Examination (MMSE)
- Montreal Cognitive Assessment (MoCA)
- Cognistat
- Advanced Clinical Solutions
- Neuropsychological Assessment Battery (NAB)
- Halstead-Reitan Battery
- Repeatable Battery for the Assessment of Neuropsychological Status (RBANS)
- Wechsler Adult Intelligence Scale, 4th ed. (WAIS-IV)
- Wechsler Abbreviated Scale of Intelligence, 2nd ed. (WASI-II)
- Controlled Oral Word Association Test (COWAT) Oral Fluency
- Behavior Rating Inventory of Executive Functioning, 2nd ed. (BRIEF-2)
- Delis-Kaplan Executive Function System (D-KEFS)
- Trail Making Test
- Wisconsin Card Sort Test (WCST)
- Clock Drawing Test
- Bender Visual Motor Gestalt Test, 2nd ed.
- Rey Complex Figure Test and Recognition Trial
- Rey-Osterrieth Complex Figure Test
- Ruff Figural Fluency Test (RFFT)
- Visual Motor Integration (VMI)
- California Verbal Learning Test, 3rd ed. (CVLT-3)
- Wechsler Memory Scale, 4th ed. (WMS-IV)
- Demetia Rating Scale (DRS)

**Protective Provisions:**

1. The examinations will be audio recorded; no video recording will occur unless otherwise agreed or ordered by the Court.

2. No third-party observers, including counsel, will be present during the examinations.

3. All raw data, notes, and test materials will be treated as confidential and used solely for the purposes of this litigation.

4. The examiner will prepare a written report under Rule 35(b) and provide it to all parties.

JOINT STIP RE PLTFS' MTN TO COMPEL
INDEPENDENT MEDICAL EXAMINATIONS        -23-

## III.    CONCLUSION

Plaintiffs have attempted in good faith to meet and confer with defense counsel pursuant to Local Rule 37-1 regarding the requested examinations, but have not obtained a stipulation and therefore must obtain leave of this Court.

Because Defendants Oliver Angus and Jamie Angus have affirmatively placed Oliver's mental capacity, judgment, and psychological functioning in controversy; because the specific facts discovered in this action demonstrate that one very likely possibility is that while Oliver is not malingering, Jamie may be exaggerating his condition; because good cause exists to permit the examinations; and because the proposed evaluations are narrowly tailored, confidential, and subject to appropriate protective conditions, Plaintiffs respectfully request that the Court order independent mental examinations of Defendants Oliver Angus and Jamie Angus pursuant to Federal Rule of Civil Procedure 35(a).

## DEFENDANTS' POSITION

## I.    INTRODUCTION

Defendants Oliver Angus ("O.A."), Michael Angus, and Jamie Angus ("J.A.") (collectively, the "Family Defendants") respectfully request that the Court deny Plaintiffs' salacious attempts to distract the Court with a colossal amount of irrelevant and hearsay information as a way to subject Defendants O.A. and J.A. to independent medical examinations ("IMEs"). Plaintiffs' request is borderline abusive and harassing.

This case is nothing more than adolescent experimentation between minor peers that has been blown out of proportion. Plaintiffs' complaint is riddled with inaccuracies and exaggerations that go well beyond what Plaintiffs M.S. and I.H. could independently recall. At M.S.'s deposition, he denied that a "rape" had occurred on October 10, 2022 in direct contradiction to Plaintiff's complaint in this case. Exhibit 1. He admitted that his own mother gave him words like "groomer" and "sexual battery" to describe events and repeatedly looked to her for approval before answering. Exhibit 1. His testimony was hesitant, coached, and inconsistent, often walking back claims

JOINT STIP RE PLTFS' MTN TO COMPEL
INDEPENDENT MEDICAL EXAMINATIONS        -24-

mid-answer. At I.H.'s deposition, she described her memory as "fuzzy" and "like a fog," gave shifting accounts of key incidents, and repeatedly admitted she continued to communicate voluntarily with O.A. despite claiming to be afraid of him. Exhibit 2. She even adopted language and imagery such as an "into my soul" stare that echoes media she consumed, not independent recollection. Exhibit 2.

O.A.'s behavior has been consistent with his developmental profile and is not predatory. His parents acted reasonably on the information available to them. They did not ignore warnings or neglect responsibilities, but were limited by what they were told. For example, Jessica DeVita knew of M.S. and O.A.'s sexual relationship as early as November 2022 but never informed the Angus family or the Santa Monica-Malibu Unified School District ("SMMUSD"). Instead, DeVita spread defamatory statements against O.A. on social media and to his special needs providers. Exhibit 3, 4 and 5. Likewise, the SMMUSD, as the central hub of communication and supervision, did not share information with the Anguses, leaving them unaware of issues. Plaintiffs' narrative depends on hindsight, exaggeration, and omission, not on a fair account of what happened—which was three teenagers, all with disabilities, navigating adolescent sexuality. Nothing more and nothing less. It is heartbreaking that Plaintiffs' parents have dragged their children's coming-of-age before this Court.

For Plaintiffs' theory of the case to work, they must overturn the determinations of multiple independent courts, agencies and treating doctors who have found ▮▮▮▮ ▮▮▮▮ Exhibits 6-20. Instead of accepting this truth, Plaintiffs malignantly suggest that his mother fabricated his disability and suffers from "factitious disorder." Plaintiffs cherry-pick hearsay and irrelevancies, while ignoring the fact that ▮▮▮▮ ▮▮▮▮ ▮▮▮▮ ▮▮▮▮ *Id*. Plaintiffs' motion rests not on law or fact, but on stigma, conjecture, and offensive speculation.

JOINT STIP RE PLTFS' MTN TO COMPEL
INDEPENDENT MEDICAL EXAMINATIONS          -25-

## II.    PROCEDURAL BACKGROUND

On October 21, 2024, Plaintiffs filed their Third Amended Complaint ("TAC"). Dkt. No. 108. Plaintiffs' TAC raises the following claims against Oliver Angus: (5) Sexual Battery via California Civil Code section §1708.5 and California Code of Civil Procedure §430.1, (10) Negligence via California Civil Code §§1714, 3333, (11) Assault, and (12) Battery. In addition, Plaintiffs' TAC raises the following claims against Defendants Jamie and Michael Angus: (6) Nonstatutory Parental Liability, and (10) Negligence. All the claims raised against the Family Defendants arise under civil torts, which mental incompetency/capacity is not a defense. *Spaulding v. U.S.*, 621 F.Supp. 1150 (1985). The focus for torts shifts to whether the person acted unreasonably, rather than focusing on their mental state as a bar to liability. *Id.*

On November 4, 2024, the Family Defendants filed their Answer to Plaintiffs' TAC. Dkt. No. 112. In review of the Answer, the Family Defendants raise no defense of mental incompetency/capacity. Therefore, Plaintiffs request to compel IMEs of Defendants O.A. and J.A. has nothing to do with this litigation, and is nothing more than harassment.

## III.    FACTUAL BACKGROUND

What began as adolescent exploration among peers has since been distorted into allegations of abuse through outside influence. M.S. and I.H. were both minors with disabilities, *as was O.A.* What Plaintiffs now present is a narrative constructed and amplified by adults, not a consistent record of memory. Exhibits 1-5.

At deposition, M.S. demonstrated heavy dependence on his mother, Jessica DeVita. He appeared confused, anxious, and repeatedly looked to her and counsel before answering. Exhibit 1. He admitted that words like "groomer" and "sexual battery" came from her, not from his own vocabulary. *Id.* His testimony shifted mid-answer, often sounding scripted, and he even counted "reasons" on his fingers like memorized talking points. *Id.* He acknowledged inappropriate behavior of his own, such as exposing himself to O.A. over video calls, sending sexualized messages, and

JOINT STIP RE PLTFS' MTN TO COMPEL
INDEPENDENT MEDICAL EXAMINATIONS            -26-

threatening O.A. in emails. *Id.* His testimony reflects coaching and outside scripting, not independent recollection. He admitted that no "rape" occurred on October 10, 2022. *Id.*

I.H. likewise presented as inconsistent and impressionable. Exhibit 2. She repeatedly described her memory as "fuzzy" and "like a fog," defaulting to "I don't remember" or "probably." *Id.* Her allegations expanded dramatically over time: beginning with a bite incident in November 2022, adding new claims during a Stuart House interview in November 2023, and then growing further in the civil complaint of October 2024. *Id.* She contradicted herself—for example, first describing Legoland as a happy memory, only later adding that misconduct occurred there. *Id.* She admitted to continued voluntary contact with O.A., including late-night photo messages and social media interactions, despite saying she was afraid of him. *Id.* Much of her dramatic language mirrored books and media she consumed, including *It Ends With Us* and *Komi Can't Communicate*, which feature obsessive stares and controlling characters strikingly similar to the phrases she used about O.A. *Id.*

███████████████████████

███████ Ex. 12-15. That Plaintiffs dismiss these determinations because O.A. sometimes appears capable reflects a stigmatizing misunderstanding of disability. A diagnosis is not negated by moments of competence.

The Plaintiffs opportunistically point to ███████████████████

███████████████████████████████████

███████████████████████████ Exhibit 4, ¶¶10 & 12; and Exhibit. 5, ¶¶3-8. Plaintiffs' attack on O.A.'s ability to access to his special needs programming is nothing new as it fits Jessica DeVita previous vindictive agenda against O.A. and his family. Prior to bringing this case, DeVita widely tweeted that O.A. was a predatory rapist in the special needs community, and defamed him at his special needs programming. Exhibits 3-5.

Plaintiffs also attempt to reframe J.A.'s advocacy as pathology, suggesting without evidence that she suffers from "factitious disorder." This accusation is a smear. Parents are expected to push for supports, and families navigating the special education system do so every day. Demonizing parental advocacy as mental illness is unprecedented, offensive, and inconsistent with both law and policy.

The record shows that O.A.'s parents acted reasonably on the information available to them. They did not ignore warnings or neglect responsibilities. They took corrective and supportive measures. The Plaintiffs' narrative rests on hindsight, exaggeration, and omission, not on a reliable account of what happened.

In short, Plaintiffs' own witnesses have demonstrated unreliability, inconsistency, and outside influence. The attempt to compel psychiatric examinations is not grounded in Rule 35's standards but in an effort to weaponize stigma and invade Defendants' privacy. The motion should be denied.

## IV.    LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a court "may order a party whose mental or physical condition ... is in controversy to submit to a physical or mental

JOINT STIP RE PLTFS' MTN TO COMPEL
INDEPENDENT MEDICAL EXAMINATIONS          -28-

examination by a suitably licensed examiner" upon a showing of good cause. Fed. R. Civ. P. 35(a). An order requiring an examination under Rule 35 may be issued only (1) when the mental or physical condition of the party or person in the party's custody is "in controversy" and (2) good cause supports the order. *Schlagenhauf v. Holder*, 379 U.S. 104, 119 (1964). These requirements "are not met by mere conclusory allegations of the pleadings –nor by mere relevance to the case – but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination. *Schlagenhauf*, 379 U.S. at 118.

## V.    ARGUMENT

Plaintiffs fail to cite a single case where a court has ordered a mental examination of a Defendant in a civil tort case. Moreover, Plaintiffs fail to cite a single case where the court has ordered a mental examination for purposes of establishing that the Defendant does not allegedly have a disability, and/or to that the Defendant allegedly has an undisclosed disability. If the Court were to grant Plaintiffs' this extraordinary request, then it would be an extreme departure from the current case law.

### A. Defendants O.A. And J.A. Mental Condition Is Not 'In Controversy'

A mental condition is "in controversy" when it is the subject of the litigation. *Gavin v. Hilton Worldwide, Inc.*, 291 F.R.D. 161, 164 (N.D. Cal. 2013). Courts have determined that the "in controversy" requirement is satisfied where at least one of the following factors is present:

(1) a claim for intentional or negligent infliction of emotional distress;

(2) an allegation of a specific mental or psychiatric injury or disorder;

(3) a claim of unusually severe emotional distress;

(4) plaintiff's offer of expert testimony to support a claim of emotional distress; or

(5) plaintiff's concession that their mental condition is "in controversy" within the meaning of Rule 35(a). *Turner v. Imperial Stores*, 161 F.R.D. 89, 95 (S.D. Cal.

1995).

A party cannot be compelled to submit to a physical or mental examination solely on the basis of unsubstantiated allegations made by the opposing party. *Schalgenhauf v. Holder*, 379 US 104, 118 (1964). For example, a plaintiffs' allegations that the defendant was negligent and unfit to drive was not sufficient by themselves to justify an order compelling defendant to submit to a mental exam (where defendant has not asserted his mental condition in support of or in defense of a claim of negligence). *Id*. Furthermore, as set forth in *Schlagenhauf v. Holder*, 379 U.S. at 119*,* "there are situations where the pleadings alone are sufficient to meet these requirements. A plaintiff in a negligence action who asserts mental or physical injury, cf. *Sibbach v. Wilson & Co., supra*, places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury. This is not only true as to a plaintiff, but applies equally to a defendant who asserts his mental or physical condition as a defense to a claim, such as, for example, where insanity is asserted as a defense to a divorce action. See *Richardson v. Richardson*, 124 Colo. 240, 236 P.2d 121. See also *Roberts v. Roberts*, 198 Md. 299, 82 A.2d 120; Discovery as to Mental Condition Before Trial, 18 J.Am.Jud.Soc. 47 (1934)."

Here, based on the factors set forth in *Turner* and *Schlagenhauf*, Plaintiffs alone assert that Defendants have placed their mental or physical condition at issue due to "(2) an allegation of a specific mental or psychiatric injury or disorder". However, Defendants have not made any allegation of a specific mental or psychiatric injury in this litigation.

Defendants have not asserted a mental or physical condition either in support of, or as a complete defense of any of Plaintiffs' claims raised against them in Plaintiffs' TAC. There is no pleading that Defendant O.A.'s disability caused Plaintiffs' injuries. Instead, Plaintiffs alone are challenging the validity of O.A.'s real and documented disability and J.A.'s fitness as a parent. Under the principles discussed in *Schlagenhauf*,

JOINT STIP RE PLTFS' MTN TO COMPEL
INDEPENDENT MEDICAL EXAMINATIONS    -30-

Plaintiffs have failed to meet this burden, and this instant motion should be denied as Plaintiffs' unsubstantiated allegations cannot put the mental state of another in controversy.

Defendants should not be forced to submit to an IME due to O.A. having a real and documented disability. California law does not explicitly provide that a documented disability serves as a defense to tort claims. Instead, tort liability generally arises from conduct that breaches a duty of care or causes harm, and the existence of a disability, though it is relevant the standard of care, such as in CACI 402 and 403, does not inherently negate such liability. A defendant's disability may be considered in assessing whether their conduct met this standard, but it does not automatically absolve them of liability. Therefore, Defendant O.A.'s documented disability cannot be "in controversy" because, even though it is relevant to the reasonableness of his actions, it is not a core defense that can be asserted in response to the claims raised in Plaintiffs' TAC. See *Ashby v. Mortimer*, 329 F.R.D. 650, 654 (2019).

Further, if the Court were to grant Plaintiffs the extraordinarily relief they seek, then it would be an extreme departure from the current case law. As outlined in the dissent in *Schlagenhauf*, if Plaintiffs' doctors are allowed to examine a Defendant such as O.A. or J.A., then they will be "inclined to go on a fishing expedition in search of anything which will tend to prove that the defendant was unfit to perform the acts which resulted in the plaintiff's injury. And a doctor for a fee can easily discover something wrong with any patient—a condition that in prejudiced medical eyes might have caused the accident. Once defendants are turned over to medical or psychiatric clinics for an analysis of their physical well-being and the condition of their psyche, the effective trial will be held there and not before the jury. There are no lawyers in those clinics to stop the doctor from probing this organ or that one, to halt a further inquiry, to object to a line of questioning. And there is no judge to sit as arbiter. The doctor or the psychiatrist has a holiday in the privacy of his office. The defendant is at the doctor's (or psychiatrist's) mercy; and his report may either overawe or confuse the jury and prevent

JOINT STIP RE PLTFS' MTN TO COMPEL
INDEPENDENT MEDICAL EXAMINATIONS                -31-

a fair trial." *Schlagenhauf v. Holder*, 379 U.S. 104, 125 (1964).

In addition, that the Family Defendants have sought a protective order to prohibit O.A.'s deposition in this matter has not put either Defendants mental capacity in controversy. In *Winters v. Travia*, the court held that seeking a protective order against a deposition due to alleged mental anguish does not automatically place the party's mental condition in controversy *Winters v. Travia*, 495 F.2d 839 (1974). Therefore, the Family Defendants motion for a protective order to prohibit the deposition should not open the door for the Court to allow Plaintiffs' hired doctors to probe and prod Defendant O.A. regarding his disability.

### B. Plaintiffs Have Failed To Demonstrate 'Good Cause' For The Examinations Prayed For By The Plaintiffs

The Plaintiffs have not shown that the examinations are necessary because they cannot be obtained by any other means. With regard to the movant's burden to show good cause to require a party to submit to a Rule 35 IME, this Court has explained: The "good cause" requirement is satisfied, in part, by a showing that the requested information cannot be obtained by other means. *Schlagenhauf*, 379 U.S. at 118. "Good cause" generally requires a showing of specific facts justifying discovery. Factors that courts have considered include, but are not limited to, the possibility of obtaining desired information by other means, whether plaintiff plans to prove his claim through testimony of expert witnesses, whether the desired materials are relevant, and whether plaintiff is claiming ongoing emotional distress. *Turner v. Imperial Stores*, 161 F.R.D. 89, 97-98 (S.D. Cal. 1995) (expert testimony); *Schlagenhauf*, 379 U.S. at 118-119 (availability by other means).

Even if good cause is shown, it is still within the court's discretion to determine whether to order an examination. *Stinchcomb v. United States*, 132 F.R.D. 29, 30 (E.D. Pa. 1990); *Williams v. Troehler*, 2010 WL 121104, at *4 (E.D. Cal. Jan. 7, 2010). Although the rule is to be construed liberally to allow the examination, the court must consider the interest of the party to be examined in avoiding unnecessary invasion of

JOINT STIP RE PLTFS' MTN TO COMPEL
INDEPENDENT MEDICAL EXAMINATIONS          -32-

privacy balanced against the moving party's right to a fair trial. *Curtis v. Express, Inc.*, 868 F. Supp. 467, 468 (N.D.N.Y. 1994).

Here, Plaintiffs have failed to meet their burden to show good cause - a showing of specific facts justifying discovery - allegations showing the need for the information sought and lack of means for obtaining it elsewhere. *Schalgenhauf* at 114-122.

Plaintiffs' reasons for seeking an IME for O.A. boils down to the following points: (1) allegedly there are discrepancies between his reported medical condition and his actual capabilities; and (2) allegedly O.A. can't be disabled because he has participated in various physical activities, such as karate and soccer (both are special needs programming). In regard to these points, Plaintiffs fail to acknowledge ██████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████ Exhibits 6-20. It would be complete invasion of Defendant O.A.'s privacy to be subject to an IME, especially in light of well documented and publicly recognized information regarding his disabilities.

Finally, requiring O.A. to undergo another evaluation could very well place his health and safety at risk, as it is likely to cause him to experience ████████████
████████████████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

Exhibit 16, ¶23.

Plaintiffs' reason for seeking an IME of J.A. is a far-fetched theory that J.A. allegedly suffers from a "factitious disorder" affecting others, and thus exaggerates or fabricates O.A.'s disability. This is the first time that the Family Defendants are hearing of this theory, which is certainly not an allegation or defense that the Family Defendants have alleged in any pleadings. Plaintiffs contend that "facts that have been discovered so far in the action suggest that her involvement in O.A.'s diagnosis, medical history, and treatment is highly suspect.", which does not meet the "in controversy" or "good cause" standards. Moreover, being an alleged "gatekeeper" to O.A.'s medical information, or otherwise known as a parent and court appointed co-conservator, does not warrant an IME of J.A. because that also does not meet the "in controversy" or "good cause" standards. Plaintiffs' argument is essentially a credibility argument, which in no way opens J.A. to an IME as a Defendant in a case. Plaintiffs do not need an IME of J.A. in order to argue their theory.

Overall, Plaintiffs disregard the standards for compelling IMEs, and file this motion to harass the Family Defendants, and further burden the Court with additional motion practice. Moreover, the Family Defendants certainly should not be administered fifty-eight (58) testing instruments, which none are supported by "good cause". For example, Plaintiffs seek to administer "Alcohol Use Disorders Identification Test ("AUDIT"), ADUIT-C, and Drug Abuse Screening Test ("DAST"), which further demonstrates that Plaintiffs' demand for an IME is nothing more than a "fishing expedition in search of anything which will tend to prove that the defendant was unfit to

JOINT STIP RE PLTFS' MTN TO COMPEL
INDEPENDENT MEDICAL EXAMINATIONS                    -34-

perform the acts which resulted in the plaintiff's injury…" *Schlagenhauf v. Holder*, 379 U.S. 104, 125 (1964).

## VI. CONCLUSION

Based on the foregoing, the Family Defendants respectfully request that Plaintiffs motion to subject them to IMEs be denied. In addition, the Family Defendants respectfully request that they be award attorney's fees and costs for having to defend against a frivolous motion pursuant to Federal Rules of Civil Procedure Rule 37(a)(5)(B).

Dated: October 8, 2025

Respectfully Submitted,

ORANGE LAW OFFICES

HADSELL STORMER RENICK & DAI LLP

By:    /s/ - Dan Stormer[1]
      Olu K. Orange
      Dan Stormer
      Morgan Ricketts
      Bina Ahmad
      Kate McFarlane
Attorneys for Plaintiffs M.S. and I.H.

Dated: October 8, 2025

HIRJI, CHAU & RODRIGUEZ, LLP

By:    /s/ - Alexander F. Rodriguez
      Rosa K. Hirji
      Alexander F. Rodriguez
      Ariel S. Harman-Holmes
Attorneys for Defendants Oliver Angus, Michael Angus, and Jamie Angus

---

[1] I hereby attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

JOINT STIP RE PLTFS' MTN TO COMPEL INDEPENDENT MEDICAL EXAMINATIONS    -35-