Olu K. Orange, Esq. [S. B. #213653]
ORANGE LAW OFFICES, P.C.
3435 Wilshire Blvd., Suite 2910
Los Angeles, California 90010
Telephone: (213) 736-9900 / Facsimile: (213) 417-8800
Email: orangelawoffices@att.net

Dan Stormer, Esq. [S.B. # 101967]
Morgan E. Ricketts, Esq. [S.B. # 268892]
Bina Ahmad, Esq. [SB. #329387]
Kate McFarlane, Esq. [S.B. #340706]
Isabelle Geczy, Esq. [S.B. #349594]
HADSELL STORMER RENICK & DAI LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9600 / Facsimile: (626) 577-7079
Emails:  dstormer@hadsellstormer.com / mricketts@hadsellstormer.com
         bahmad@hadsellstormer.com / kmcfarlane@hadsellstormer.com
         igeczy@hadsellstormer.com

*Attorneys for Plaintiffs M.S. and I.H.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.S., a minor, by and through his guardian *ad litem*, Jessica DeVita; and I.H., a minor, by and through her guardian *ad litem*, Candace Hernandez,<br><br>Plaintiffs,<br><br>v.<br><br>OLIVER ANGUS, MICHAEL ANGUS, JAMIE ANGUS, MARAE CRUCE, GREGORY PITTS, ANTONIO SHELTON, SANTA MONICA MALIBU UNIFIED SCHOOL DISTRICT and Does 1 through 10,<br><br>Defendants. | Case No.: 2:23-cv-09957-SRM-MAR<br><br>[Assigned to the Honorable Serena R. Murillo – Courtroom 5D]<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TERMINATING SANCTIONS DUE TO FAMILY DEFENDANTS' WILLFUL SPOLIATION OF KEY EVIDENCE**<br><br>DATE:      May 27, 2026<br>TIME:      1:30 p.m.<br>CRTRM:  5D<br><br>[*Filed concurrently herewith: Ricketts Decl & Exs]*<br><br>Complaint filed:   November 22, 2023<br>Motion Cutoff:     May 27, 2026<br>Discovery Cutoff:  March 13, 2026<br>Trial Date:        September 8, 2026 |

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES..................................................................................................ii

REPLY ...............................................................................................................................1

I.      INTRODUCTION................................................................................................1

II.     PLAINTIFFS HAVE SHOWN AN ADEQUATE FACTUAL BASIS
        FOR TERMINATING SANCTIONS.....................................................................2

III.    ARGUMENT .........................................................................................................3

        a.      Plaintiffs Show The ESI Is Lost And Irretrievable ...................................3

        b.      Plaintiffs Show The Destruction Occurred During This
                Litigation..................................................................................................5

        c.      Plaintiffs Provided Plausible, Concrete Suggestions Of What
                The Evidence Might Have Been..................................................................5

        d.      Plaintiffs Have Directly Shown Intent To Deprive ...................................7

        e.      Circumstantial Evidence Supports A Finding Of Intent to
                Deprive.....................................................................................................8

        f.      The Severe Remedy of Terminating Sanctions Is Appropriate
                Given Family Defendants' Bad Faith........................................................10

IV.     CONCLUSION ....................................................................................................14

Certificate of Compliance ..................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

### Federal Cases

*Fast v. GoDaddy.com*
LLC, 340 F.R.D. 326 (Az. Dist. Ct. 2022) ................................................................5

*Green v. McClendon*
262 F.R.D. 284 (S.D.N.Y. 2009) ...........................................................................10

*Gregory v. State of Montana*
118 F.4th 1069 (9th Cir. 2024) ...............................................................................7

*Oracle America, Inc. v. Hewlett Packard Enterprise Company*
328 F.R.D. 543 (N.D. Cal. 2018)............................................................................3

*Zubulake v. UBS Warburg LLC*
220 F.R.D. 212 (S.D.N.Y. 2003) .............................................................................5

*Zubulake v. UBS Warburg LLC*
229 F.R.D. 422 (S.D.N.Y. 2004) .............................................................................5

### Federal Statutes

42 U.S.C.
§ 2701 (Stored Communications Act) .....................................................................3

Federal Rules of Civil Procedure
Rule 37(e)...............................................................................................................3
Rule 37(e)(1) ........................................................................................................14
Rule 37(e)(2) ..........................................................................................................7

## REPLY

### I.    INTRODUCTION

The Family Defendants do not credibly contest the critical facts here – that after they became aware of this lawsuit, they intentionally deleted some Reddit posts and Oliver's entire Instagram account, and failed to preserve other Reddit posts which were removed by moderators. While Michael Angus declares that the Instagram account was allegedly "hacked", this self-serving declaration is discredited by the Basic Subscriber Information from Meta, which shows the account deletion was requested in July 2024 and that the only email address ever associated with Oliver's account was Michael Angus's email. Mr. Angus provides no documentary evidence that casts doubt on Plaintiffs' evidence, and does not even provide any detail to support his claim.

Boxed in on the facts, Defendants pivot to reframing the applicable law, in the process mischaracterizing cases and suggesting standards that have never been adopted by any court. For example, contrary to Defendants' argument, under existing precedents Plaintiffs need not prove what was in the deleted social media content. Courts recognize that proving what was lost would be impossible in most spoliation cases. Another example: Plaintiffs need not provide direct evidence of Defendants' intent in deleting the evidence, which again would be an impossible standard in most cases. Recognizing the rarity of a spoliator's direct admission of bad faith, courts have generally focused more on circumstantial evidence of intent, such as the timing of deletions. Yet a third example where the Opposition is flat wrong: the prejudice created by spoliation cannot be cured by pointing to different evidence in the wronged party was able to obtain in discovery.

While the Opposition does contain citations to authority, none of their authorities support the conclusions they imply this Court should reach. Defendants do not offer a serious justification for denying terminating sanctions that is supported by either the facts or the law. Terminating sanctions should be granted.

/ / /

/ / /

---

PLTF'S REPLY ISO MTN FOR SANCTIONS DUE
TO FAMILY DEFTS' SPOLIATION OF KEY EVID        -1-

## II.   PLAINTIFFS HAVE SHOWN AN ADEQUATE FACTUAL BASIS FOR TERMINATING SANCTIONS

The claim that Plaintiffs have not shown that the ESI was actually lost does not even pretend to be a comprehensive refutation of the very concerning evidence presented in the Motion.

It's true that *one* deleted Reddit post (the Toxic Post) was preserved by the Wayback Machine. Plaintiffs agree the content of the Toxic Post was not spoliated because it was not lost.[1] Plaintiffs discussed this post because it had been destroyed and, through sheer luck, Plaintiffs were able to locate it through the Wayback Machine and could prove that it was responsive. The bigger concern here are the posts that were removed by moderators (Dkt. 381-1, ¶¶ 30-32, Exhs. 20-22) which likely would have shown Oliver's thoughts on I.H., his mental capacity, or comments about women he was sexually attracted to, as well as the other additional posts that were deleted by the user, none of which were preserved by the Wayback Machine or by Plaintiffs' investigator. This is spoliation.

It's also true that *whatever the Family Defendants chose to leave active on* Oliver's Reddit account remains publicly viewable. That does not excuse the fact that Oliver and Michael intentionally deleted all of the inappropriate posts that "could be used to paint [Oliver] as a bad person" after Michael became aware of them "through some of this proceeding". Michael Angus claims his deposition testimony was taken "out of context" by Plaintiffs in the Motion, but his admissions were bad enough that he has tried three times to change them using declarations and an errata. *See* Ricketts Decl. ¶ 3, Exh. 25. The deleted posts are not publicly viewable, and are lost and irretrievable. Defendants offer no evidence to suggest otherwise. This constitutes selective preservation: whatever posts the Family Defendants approved of stayed public, but whatever posts made Oliver look like "a bad person" were destroyed.

It's further true that I.H., of course, at one time had access to Oliver's numerous

---

[1] However, the metadata of the Toxic Post likely *was* spoliated.

Instagram communications with her. But I.H. has always been forthcoming about why she no longer has them: she deleted the entire chat as a self-protective measure to help stop ruminating on the abuse and assaults. Dkt. 381-2, ¶ 8. She did this long before there was a lawsuit. *Id*. at ¶ 9. She is entitled to obtain this evidence from other custodians, such as Oliver, who still had it after the litigation was filed. Oliver was not entitled to delete that evidence after the litigation commenced and he had notice of its importance. That is spoliation.

Plaintiffs have adequately shown that they cannot obtain the contents of Oliver's social media posts from the social media companies. Defendants do not even attempt to explain how Plaintiffs could do so in light of the prohibition on social media companies disclosing the contents of digital communications. 42 U.S.C. § 2701 (Stored Communications Act). But further, Plaintiffs have shown that the social media companies do not have the deleted information, by demonstrating that (1) Instagram will fully delete an account in as little as 30 days upon user-initiated deletion, but not more than 90 days (Dkt. 381-1, ¶ 28) and (2) based on the timeline, the deletion process was begun more than 90 days before a subpoena issued to Meta. Dkt. 381, 3:16-17 (Instagram account deleted in July 2024) and 4:8-13 (subpoena issued to Meta in February 2025).

### III.   ARGUMENT

#### a.   Plaintiffs Show The ESI Is Lost And Irretrievable.

Plaintiffs have clearly established that ESI was lost under Rule 37(e); Oliver's Instagram and Reddit content is irretrievable. Family Defendants' reliance upon *Oracle America, Inc. v. Hewlett Packard Enterprise Company*, 328 F.R.D. 543, 546 (N.D. Cal. 2018) is misplaced, as this case centered on emails that were produced by a number of custodians at Oracle, but one of its Co-Presidents, Mark Hurd, failed to produce the same emails. It turned out some of those duplicative documents had been deleted. Neither Oracle nor Hewlett Packard could show the timing or reason for the deletions. The Northern District of California held that Hewlett Packard could not show that any

of the 500 emails and attachments were actually "lost" – as in, had not been produced by any other custodian – and moreover, most of the missing documents were created before the obligation to preserve arose.

The circumstances could not be more different here: the Family Defendants intentionally deleted Oliver's entire Instagram account. Meta's own Instagram Basic Subscriber Information shows the account was closed on July 28, 2024. Dkt. 381 at 6:17-22; Dkt. 381-1, ¶¶ 25-27. Furthermore, based on Meta's own Instagram Terms and Conditions, when content or an account is deleted, the deletion process automatically begins "no more than 30 days after the request." Dkt. 381 at 15:10-24; Dkt. 381-1, ¶ 28. Additionally, Plaintiff I.H. deleted conversations with Oliver well before the commencement of litigation, as they upset her significantly; this is corroborated by the fact that Oliver's account was blocked on I.H.'s own Instagram. I.H.'s retention of a different set of messages multiple other individuals, does not replace the messages between Oliver and I.H. that would substantiate I.H.'s claims. Those have now been lost and are irretrievable.

As for Oliver's Reddit posts on his OzoneMusicOpinions Reddit account[2], Plaintiffs' investigator was only able to review posts that Oliver had created on or after November 28, 2023. Dkt. 380-2, ¶ 29, Exh. 13 at CACD PLAINTIFFS 003579. The fact that the records for Oliver's OzoneMusicOpinions Reddit account only go back until the month the litigation was filed (November 2023) is even more alarming indicia of spoliation. Reading Michael's declarations and errata together with his deposition testimony, Oliver had made inappropriate posts on Reddit both before and during this litigation. Michael insists that any posts he had Oliver take down were destroyed before

---

[2] Family Defendants cite the investigator's assertions re: Oliver's other Reddit account, Professional-Goal582, which was suspended by Reddit. Dkt. 387 at 6:03-09. Throughout Plaintiffs' Motion for Terminating Sanctions, Plaintiffs were clear in focusing on deletions tied to the OzoneMusicOpinions Reddit account. That some posts made on the Professional-Goal582 account were partially retrievable is irrelevant to the spoliation of the OzoneMusicOpinions Reddit account.

this litigation; obviously, Oliver had to have a Reddit account and posts that were being reviewed by Michael at that time. But *no posts dated before this litigation remain*. It is reasonable to conclude that <u>all</u> of Oliver's pre-November 2023 posts were culled by Michael and Oliver after this litigation was filed.

### b. Plaintiffs Show The Destruction Occurred During This Litigation.

Plaintiffs have adequately shown that during the course of this litigation, several of Oliver's Reddit posts were removed by moderators (Dkt. 381-1 at ¶¶ 30-33, Exs. 20-22), others were "deleted by user" (Dkt. 380-2 at ¶¶ 22-27), and his Instagram account was deleted entirely (Dkt. 381-1 ¶¶ 25-27, Exh. 18) after collecting one Instagram screenshot in response to discovery seeking social media content, which had been propounded on April 29, 2024.[3] Dkt. 387-1 ¶ 6 (defense counsel's declaration in support of Opposition).

### c. Plaintiffs Provided Plausible, Concrete Suggestions Of What The Evidence Might Have Been.

Defendants dismiss Plaintiffs' suggestions as "speculative," and imply that Plaintiffs must demonstrate what the lost evidence would have shown. But "courts have held that a party must only come forward with plausible, concrete suggestions as to what the [destroyed] evidence might have been." *Fast v. GoDaddy.com* LLC, 340 F.R.D. 326, 339 (Az. Dist. Ct. 2022). Plaintiffs have more than met this burden.

First, Plaintiffs have provided plausible, concrete suggestions as to what the evidence might have been: photographs or video of Plaintiffs – which Oliver told

---

[3] There is some question of exactly when the destroyed posts were made, but it does not matter because a party's obligation to preserve evidence does not only apply to historic documents already in existence at the time their obligation arises. It also applies to documents created throughout the litigation: "[a] party's discovery obligations do not end with the implementation of a 'litigation hold' – to the contrary, that's only the beginning." *See Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004); see also *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 219 (S.D.N.Y. 2003) (noting that UBS "would have met its preservation obligations by preserving one copy of all relevant documents that existed at, <u>or were created after</u>, the time when the duty to preserve attached." (Emphasis added.)).

PLTF'S REPLY ISO MTN FOR SANCTIONS DUE TO FAMILY DEFTS' SPOLIATION OF KEY EVID

-5-

Plaintiffs he possessed and could restore at any time from backup; comments on his relationship with I.H.; admissions that would tend to suggest that Michael and Jamie Angus were not adequately supervising or disciplining him; admissions that he knew his conduct was wrong and that Plaintiffs did not consent to it; and other relevant, plausible suggestions. See Dkt. 381 at 22:11-23:23.

But Plaintiffs have gone further than mere plausibility. Plaintiffs have provided strong evidence that at least six Reddit posts were removed by moderators from topics that likely pertained to I.H. because they referenced an 18 year old male and a 17 year old girlfriend (Oliver and I.H.'s ages at the time; Oliver believed I.H. was his girlfriend). Dkt. 381 at 10:21-11:11.

As to the "deleted by user" category of posts, Plaintiffs have additionally shown that at least one (the Toxic Post) referenced I.H. Dkt. 381 at 8:22-10:15. The Toxic post *was visible during this litigation* but now shows as "deleted by user". *Id*. This means that Oliver deleted it during the litigation. Therefore, the only "deleted by user" post that Plaintiffs can review was relevant and unfavorable. This supports an inference that the other deleted posts might also be relevant and unfavorable. Again, Plaintiffs are not required to prove what was in the deleted posts.

Finally, Plaintiffs have submitted I.H.'s declaration with as much detail as she can provide about what would have been lost as far as Instagram messages between Oliver and I.H. Dkt. 381-2. She states that Oliver would message her almost every day beginning in 10th grade, and if she didn't respond he would become furious, so she usually responded. *Id*. at ¶ 4. She further states that Oliver said "many inappropriate and sexualized comments and questions" to her in these messages, and pressured her to send pictures of her without her clothes on, which she eventually did (also over Instagram message). *Id*. at ¶ 5. She declares that she would break up with Oliver over Instagram message, and would cite his abuse in explanation, which he would admit but dismiss or blame her somehow for. *Id*. at ¶ 6. I.H. explains that she has poor memory and a specific learning disability, and that she remembers some of Oliver's assaults but not all of them.

The missing Instagram chats would fill in a lot of blanks for I.H. and remind her of things that Oliver did and said to her that she has now forgotten either as a coping mechanism or because of her disability.

In other words, Plaintiffs have been able to make a fairly detailed showing of what the spoliated evidence was – a showing that far exceeds the mere "plausible, concrete suggestions" they are required to provide.

### d. Plaintiffs Have Directly Shown Intent To Deprive.

The Opposition misapprehends *Gregory v. State of Montana*. There, a district court affirmatively found that the State had not "willfully" spoliated relevant surveillance footage, given it had made some attempts to preserve it, but that the State had acted "recklessly" in failing to immediately ascertain how long the footage would be kept. 118 F.4th 1069, 1074-1075, 1080 (9th Cir. 2024). The Ninth Circuit held that the finding of recklessness did not satisfy the intent to deprive element required under FRCP 37(e)(2). This does not help Defendants.

During his deposition, Michael Angus, a Harvard-trained lawyer, testified that he became aware of problematic Reddit posts *because of this proceeding* – although he now claims he does not remember when he learned of the posts.

"Q: When you say you went with him to let him -- went with him through the Reddit posts to let him know that this material is inappropriate, when was that?

 A: I don't recall. When we became aware of it.

Q: Aware of what?

A: Aware of the post.

Q: And how did you become aware?

A: I don't recall. I'm sure it was through some of this proceeding.

Q: Okay. This proceeding, being the lawsuit?

A: Yes." Ricketts Decl. ¶ 3, Ex. 25.

He then admitted that he went through the social media accounts with Oliver, and they deleted various posts together. He now claims, in Opposition, that his admission

was taken "out of context," but more context doesn't help:

> "Q: After you spoke to [Oliver] about it, did he take the post down?
>
> A: We did that together. So the accounts where we were able to do it, we did it. Some accounts, as I said, had been hacked. And we couldn't get access, we couldn't delete them. You couldn't change anything about them." Ricketts Decl. ¶ 3, Ex. 25, p. 122 (for further context, see also his prior and subsequent testimony from pages 115-123).

Mr. Angus did this because, in his own words, "things that you say […] can be taken out of context and used in ways to paint you as a bad person." Dkt. 381-1, p. 121.[4]

Family Defendants made no attempt to preserve Oliver's Instagram and Reddit posts. Instead, after the commencement of litigation, Michael Angus admits he *intentionally caused posts to be deleted* to protect Oliver from being "painted" as a bad person. Not from being passively "seen" as a bad person by the general internet – but being actively "painted" as a bad person. The clear implication is that Mr. Angus was thinking about opposing counsel's use of those posts in this litigation. This was an intent to prevent Plaintiffs from using the posts.

### e. Circumstantial Evidence Supports A Finding Of Intent to Deprive.

Defendants' own representations to the Court should raise some eyebrows, and support a finding of intent to deprive. Michael Angus claims as follows:

> 12. By July 2024, it was my understanding that O.A. was having difficulty accessing or logging into the Instagram account.
>
> 13. By October 2025, while attempting to respond to Plaintiffs' Request for

---

[4] Subsequent attempts made by Family Defendants to "clarify" Michael Angus's statements are self-serving and not credible. After taking varied positions during the parties meet-and-confer (Dkt. 381-1, ¶ 24, Ex. 17), Family Defendants submitted both a Declaration from Michael Angus and a subsequent errata for his deposition, attempting to completely undo these admissions. (Dkt. 387-4 (April 17, 2026 Declaration of Michael Angus) and Dkt. 381, p. 11, fn. 5. In their Opposition, Family Defendants make a third attempt to fix this admission with another Declaration from Michael Angus. Dkt. 387-2.

Production of Documents, Set Three, I confirmed that I no longer had access to O.A.'s Instagram account.

14. During the litigation, I made multiple attempts to access O.A.'s Instagram account but was unsuccessful. I believe this was the account that was hacked as the account now belongs to an email address in the UK. When attempts are made, I receive a message this message: "No such account found."

Dkt. 387-2 (Angus Decl.) ¶¶ 12-14.

All of these representations are problematic: if Oliver could not log in to his social media accounts at a time when they had already been requested in discovery (Dkt. 387-2 ¶ 12), then Family Defendants and particularly Mr. Angus, a Harvard-trained general counsel, should have recognized that immediate efforts to recover and preserve the account were required.

Further, Mr. Angus makes no representations about how exactly he confirmed that he no longer had access to the account. (Dkt. 387-2 ¶ 13.) Did he attempt to log in and learn that the password had changed? Did Oliver still have access at that point? What date did this happen? What did he do upon confirming that he no longer had access to the account: did he choose the "Forgot password" option and seek to recover the password? Did he seek the assistance of a person skilled in e-discovery? Did he take steps to instruct Meta to retain and not destroy the account? He only says he "confirmed" that *he* "no longer had access" to the account. He does not even state that anyone other than him had lost access – what about Oliver and Jamie Angus?

Next, Mr. Angus claims that he made multiple attempts to access Oliver's account during this litigation. Dkt. 387-2 ¶ 14. Again, when? What did these attempts involve? What was done when they were unsuccessful and why was this not an immediate action item to ensure the data was preserved and not destroyed? Why didn't Defendants raise this issue so that Plaintiffs could take remedial steps to recover the information in some other way, like seeking a signed consent form from Family Defendants so that the social media companies could release the metadata to Plaintiffs before it was destroyed?

Last, Mr. Angus claims, "I believe this was the account that was hacked as the account now belongs to an email address in the UK." This representation is contradicted by Meta's own document showing the account is registered using Michael Angus's email, which was included as an exhibit in Plaintiffs' Motion. If Michael Angus believes Meta is incorrect, why isn't there more evidence than just his "belief" that the account was hacked? Where is the evidence for hacking? On what basis does he believe this was the account that was hacked, as opposed to some other social media account? Has he even bothered to check? Why not provide a screenshot of the error message? How does he know it belongs to an email address in the UK? Why not tell us what that email address is?

Contrasting with Mr. Angus' vague, self-serving, and detail-free declaration, Plaintiffs have learned directly from Instagram that it was Mr. Angus' own phone number and email that were the registered contact information on file, which could have been used to recover the account if the Family Defendants so wished. Even now, Mr. Angus declares that the account is now tied to some other email address – which he claims to know is located in the UK. Mr. Angus does not address Instagram's own Basic Subscriber Information document proving the account was deleted in July 2024, and that the only email account it was tied to at that time was his own! Dkt. 381-1 ¶ 25, Exh. 18. Despite the fact that this document was in the Motion Mr. Angus opposes, Mr. Angus does not address it at all.

### f.  The Severe Remedy of Terminating Sanctions Is Appropriate Given Family Defendants' Bad Faith.

Defendants complain that terminating sanctions are severe, but show minimal effort to avoid them. The "severity of the sanctions imposed should be congruent with the destroyer's degree of culpability." *Green v. McClendon*, 262 F.R.D. 284, 288 (S.D.N.Y. 2009). The Family Defendants' culpability is significant, and their apparent bad faith in destroying the evidence is further supported by their lack of effort and candor in their Opposition. Michael Angus, a sophisticated lawyer accused of severe and

admitted spoliation of key social media evidence, could not even submit a screenshot supporting his assertion that the account now belongs to some other foreign email address. He apparently also never documented his claimed amateur attempts to recover the account, which could have been accomplished through the time of deletion using nothing more than his own cell phone number and email address. These would have been obvious exhibits to include as support for the Family Defendants' doubtful assertions. They were not. The Court should conclude there is a reason for their omission.

Further, terminating sanctions are appropriate for the Family Defendants' outrageous flouting of the law. They have been represented by able counsel that could have advised them on how to retain social media evidence. If anyone should be held to their obligations in litigation, it is Mr. Angus, a Harvard attorney who served as general counsel for Fox News. It is unacceptable for anyone, but especially a person with that background, to claim they knew they were obligated to preserve evidence due to the litigation, but did not know how and never took any reasonable steps to find out.

Moreover, spoliating an entire social media account as well as the worst Reddit posts that would disadvantage Family Defendants is not likely just bad luck and ineptitude. To the contrary – this is wholly consistent with the Family Defendants' litigation strategy[5], both in this case and in the state court defamation case against M.S.' guardian ad litem, which has essentially been to act in bad faith, to drive up costs, and to engage in flagrant selective production.

---

[5] Make no mistake: there is a litigation strategy. At first glance, Family Defendants appear to be represented solely by Hirji, Chau & Rodriguez, since that firm handles all pleadings, discovery, and motion practice. But Family Defendants have also retained Daniel K. Dik of Fraser Watson & Crouch, LLP, and Jasmine Sadeghani of Fisher Phillips, who receive all filings. Neither has ever filed or signed a substantive document in this litigation. Mr. Dik's bio begins: "Daniel Dik's specialty is analyzing anything and everything intricate, convoluted, or complicated requiring tortuous research and analysis of legal ambiguities, followed by learned guidance for the proper course of action." It appears they have retained counsel solely to advise on litigation strategy.

Time after time, the Family Defendants have produced materials they believed were favorable – or at least necessary – while fighting tooth and nail to withhold substantially similar discovery that they obviously believed was unfavorable, without any logical reason why the discovery could be withheld. In some cases, they withdrew their objections long after making them, supporting Plaintiffs' position that they were frivolous to begin with and undertaken for reasons of gamesmanship and nothing more. The below chart shows some examples of the Family Defendants' selective production:

| Produced | Withheld |
|---|---|
| **Jamie Angus** (for deposition) <br> **Michael Angus** (for deposition) | **Oliver** (for deposition) <br><br> From February 2025, defense counsel delayed the deposition numerous times for various reasons before beginning to claim in August that Oliver *could die if deposed.* <br> See Motions for Protective Order (Dkts. 136, 157, 162); Motions for Review (Dkts. 172, 184); *ex partes* to stay deposition pending ruling (Dkts. 159, 181, 267). <br><br> Family Defendants recently withdrew their Motion for Review (which argues that Oliver *could die if he is deposed*) to allow his deposition to go forward in state court, where he has the burden of proof. Dkt. 385. |
| **Dr. Richard Boles' medical records for Oliver** <br> **Dr. Anshu Batra's medical records for Oliver** <br><br> (both had submitted letters opposing Oliver's deposition) | **Dr. L. David Willison's medical records for Oliver** <br><br> Dr. Willison had not submitted a letter supporting medical fragility. Defendants filed motions for protective order and to quash subpoenas (Dkt. 320); motion for review (Dkt. 357) – later withdrawn as to all providers except Willison. <br><br> Defense counsel Alex Rodriguez affirmatively and repeatedly instructed Willison's attorney not to respond to the subpoena, despite numerous written exchanges in which Plaintiffs' counsel insisted he provide authority for his position; he never did. This will be the subject of a forthcoming Motion for Sanctions. |

PLTF'S REPLY ISO MTN FOR SANCTIONS DUE TO FAMILY DEFTS' SPOLIATION OF KEY EVID

-12-

| Produced | Withheld |
|---|---|
| **Police bodyworn camera footage of Vice Principal Gregory Pitts** discussing his interview with Oliver regarding the sexual assault (produced only in the state case) | **Police bodyworn camera footage of School Psychologist Madison Braverman** discussing her interview with Oliver regarding the sexual assault (withheld in the state case and in this case)<br><br>Claiming the juvenile court's order sealing the juvenile court file prohibited Oliver, the juvenile, from disclosing his own file in discovery (see Dkt. 175 at 4:15-5:19 [MTC Oliver's Further Response to RFPs Set Two, RFPs 41 and 42]) |
| **Police report** (produced in the state case) | **Police report** (withheld in this case)<br><br>Claiming the state court's protective order prohibited Olu Orange and Jessica DeVita (the guardian ad litem for Plaintiff M.S.) from sharing Family Defendants' state court discovery file with Plaintiffs in this case (Dkt. 175 at 10:12-20) |
| **Westside Regional Center records for Oliver** (produced here following the Magistrate's February 9, 2026 order, Dkt. 304, on Plaintiffs' motion to compel directed at the Regional Center, Dkt. 255) | **Westside Regional Center records for Oliver**<br><br>Anticipated Motion to Quash Jessica DeVita's subpoena to the Regional Center for Oliver's records; meet and confer dated April 28, 2026 *See* Ricketts Decl. ¶ 4, Exh. 26. |

*See* Ricketts Decl. ¶ 5. The Court should carefully consider the context in which Family Defendants' spoliation occurred, which has been a series of conspicuous refusals to engage in discovery in a reasonable way, from counsel affirmatively interfering with validly issued subpoenas for records already ordered produced, to refusing to produce the key Defendant in the case for deposition for over a year, claiming he is incompetent, that he would be easily manipulated, unable to recall events, and *could die if he were to be deposed*, until he had to do so to meet his burden of proof as a plaintiff in the state case. Family Defendants would have us believe that they now calculate that the benefit of having his deposition outweighs the possibility of his demise. This amounts to an admission that all of the Family Defendants' flurry of desperate filings to prevent

Oliver's deposition were disingenuous and not based on a legitimate medical concern.

Family Defendants should not get the benefit of having their spoliation evaluated in a vacuum, void of context. The Court should consider the other signs of the Family Defendants' bad faith, and find that it is seen in their deletions of key evidence, as well.

### IV.    CONCLUSION

Because Plaintiffs have shown that substantial ESI, which would likely have been unfavorable to Family Defendants, was intentionally destroyed by Family Defendants during the course of this litigation;

and Family Defendants have failed to seriously contest any of Plaintiffs' evidence,

and because Plaintiffs have shown there was selective preservation;

and there were no efforts by Family Defendants to mitigate the destruction,

and because Plaintiffs have provided plausible, concrete suggestions as to what the destroyed evidence might have showed;

and Plaintiffs have demonstrated that substantial prejudice has resulted from the spoliation, terminating sanctions are appropriate under either Rule 37(e)(1) or (2), and should be imposed.

Dated: May 13, 2026                    Respectfully Submitted,

ORANGE LAW OFFICES

HADSELL STORMER RENICK & DAI LLP

By:   _Morgan Ricketts_____
Olu K. Orange
Dan Stormer
Morgan Ricketts
Bina Ahmad
Kate McFarlane
Isabelle Geczy
Attorneys for Plaintiffs M.S. and I.H.

## **Certificate of Compliance**

The undersigned, counsel of record for Plaintiffs M.S. and I.H., certifies that this brief contains 4694 words, which complies with the word limit of L.R. 11-6.1.


Dated: May 13, 2026

/s/- Morgan Ricketts
_____
Morgan Ricketts
