Olu K. Orange, Esq. [S. B. #213653]
ORANGE LAW OFFICES, P.C.
3435 Wilshire Blvd., Suite 2910
Los Angeles, California 90010
Telephone: (213) 736-9900 / Facsimile: (213) 417-8800
Email: orangelawoffices@att.net

Dan Stormer, Esq. [S.B. # 101967]
Morgan E. Ricketts, Esq. [S.B. # 268892]
Bina Ahmad, Esq. [SB. #329387]
Kate McFarlane, Esq. [S.B. #340706]
Isabelle Geczy, Esq. [S.B. #349594]
HADSELL STORMER RENICK & DAI LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9600 / Facsimile: (626) 577-7079
Emails:  dstormer@hadsellstormer.com / mricketts@hadsellstormer.com
         bahmad@hadsellstormer.com / kmcfarlane@hadsellstormer.com
         igeczy@hadsellstormer.com

*Attorneys for Plaintiffs M.S. and I.H.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.S., a minor, by and through his guardian *ad litem*, Jessica DeVita; and I.H., a minor, by and through her guardian *ad litem*, Candace Hernandez,<br><br>Plaintiffs,<br><br>v.<br><br>OLIVER ANGUS, MICHAEL ANGUS, JAMIE ANGUS, MARAE CRUCE, GREGORY PITTS, ANTONIO SHELTON, SANTA MONICA MALIBU UNIFIED SCHOOL DISTRICT and Does 1 through 10,<br><br>Defendants. | Case No.: 2:23-CV-09957-SRM-MAR<br><br>[Assigned to the Honorable Serena R. Murillo – Courtroom 5D]<br><br>**DECLARATION OF MORGAN RICKETTS AND EXHIBITS IN SUPPORT OF PLAINTIFFS' REPLY RE MOTION FOR TERMINATING SANCTIONS DUE TO FAMILY DEFENDANTS' SPOLIATION OF KEY EVIDENCE**<br><br>[*Filed concurrently herewith: Pltfs' Reply re Mtn for Sanctions*]<br><br>Complaint filed:  November 22, 2023<br>Motion Cutoff:  May 27, 2026<br>Discovery Cutoff:  March 13, 2026<br>Trial Date:  September 8, 2026 |

DECL OF RICKETTS & EXS ISO PLTFS' REPLY RE MTN
FOR SANCTIONS DUE TO FAMILY DEFTS' SPOLIATION

# DECLARATION OF MORGAN RICKETTS

I, MORGAN RICKETTS, declare and state:

1. I am a Partner at Hadsell Stormer Renick & Dai LLP and am one of the attorneys of record for minor Plaintiffs M.S. and I.H. I am licensed to practice law in the state of California and before this Court. The following information is based upon my personal knowledge and/or my review of documents maintained by my office relating to this case. If called upon to do so, I could and would competently testify to the truth of the matters stated herein. I submit this declaration in support of Plaintiffs' Reply In Support of Motion For Sanctions Due To Family Defendants' Spoliation of Key Evidence.

2. On February 12, 2026, Plaintiffs took the deposition of Michael Angus. During the deposition, Michael Angus admitted that he became aware of problematic social media posts from Oliver during this lawsuit. In his deposition, Michael Angus admitted he went through the social media accounts with Oliver, and they deleted the posts together.

3. Attached hereto as **Exhibit 25** is a true and correct copy of excerpts from the Deposition of Defendant Michael Angus, taken February 12, 2026.

4. I obtained from my co-counsel in this matter, Mr. Orange, a copy of a meet and confer letter sent by counsel for Family Defendants to counsel for Jessica DeVita, dated April 28, 2026. In it, Family Defendants claim they will move to quash Ms. DeVita's subpoena to the Westside Regional Center for Oliver's records, which as of April 28, 2026, had already been produced to Plaintiffs in this action pursuant to this Court's order, rendering the documents effectively available to Ms. DeVita. I am attaching a true and correct copy of that Meet and Confer letter as **Exhibit 26** to this Declaration.

5. I have inserted a chart, reproduced here below, at pages 12-13 of the concurrently filed Reply. This chart contains only true and accurate information regarding the Family Defendants' conduct in this litigation and their state court action

DECL OF RICKETTS & EXS ISO PLTFS' REPLY RE MTN
FOR SANCTIONS DUE TO FAMILY DEFTS' SPOLIATION
-1-

against Plaintiff M.S.' guardian ad litem, Jessica DeVita.

| Produced | Withheld |
|---|---|
| **Jamie Angus** (for deposition) <br> **Michael Angus** (for deposition) | **Oliver** (for deposition) <br><br> From February 2025, defense counsel delayed the deposition numerous times for various reasons before beginning to claim in August that Oliver *could die if deposed.* <br> See Motions for Protective Order (Dkts. 136, 157, 162); Motions for Review (Dkts. 172, 184); *ex partes* to stay deposition pending ruling (Dkts. 159, 181, 267). <br><br> Family Defendants recently withdrew their Motion for Review (which argues that Oliver *could die if he is deposed*) to allow his deposition to go forward in state court, where he has the burden of proof. Dkt. 385. |
| **Dr. Richard Boles'** **medical records for Oliver** <br> **Dr. Anshu Batra's** **medical records for Oliver** <br><br> (both had submitted letters opposing Oliver's deposition) | **Dr. L. David Willison's medical records for Oliver** <br><br> Dr. Willison had not submitted a letter supporting medical fragility. Defendants filed motions for protective order and to quash subpoenas (Dkt. 320); motion for review (Dkt. 357) – later withdrawn as to all providers except Willison. <br><br> Defense counsel Alex Rodriguez affirmatively and repeatedly instructed Willison's attorney not to respond to the subpoena, despite numerous written exchanges in which Plaintiffs' counsel insisted he provide authority for his position; he never did. This will be the subject of a forthcoming Motion for Sanctions. |
| **Police bodyworn camera footage of Vice Principal Gregory Pitts** discussing his interview with Oliver regarding the sexual assault (produced only in the state case) | **Police bodyworn camera footage of School Psychologist Madison Braverman** discussing her interview with Oliver regarding the sexual assault (withheld in the state case and in this case) <br><br> Claiming the juvenile court's order sealing the juvenile court file prohibited Oliver, the juvenile, from disclosing his own file in discovery (see Dkt. 175 at 4:15-5:19 [MTC Oliver's Further Response to RFPs Set |

| Produced | Withheld |
|---|---|
| | Two, RFPs 41 and 42]) |
| **Police report** (produced in the state case) | **Police report** (withheld in this case)<br><br>Claiming the state court's protective order prohibited Olu Orange and Jessica DeVita (the guardian ad litem for Plaintiff M.S.) from sharing Family Defendants' state court discovery file with Plaintiffs in this case (Dkt. 175 at 10:12-20) |
| **Westside Regional Center records for Oliver**<br><br>(produced here following the Magistrate's February 9, 2026 order, Dkt. 304, on Plaintiffs' motion to compel directed at the Regional Center, Dkt. 255) | **Westside Regional Center records for Oliver**<br><br>Anticipated Motion to Quash Jessica DeVita's subpoena to the Regional Center for Oliver's records; meet and confer dated April 28, 2026<br>*See* Ricketts Decl. ¶ 4, Exh. 26. |

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed this 13th day of May, 2026, in Pasadena, California.

_____
Morgan Ricketts

## INDEX OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| 25 | Excerpts from the Deposition of Defendant Michael Angus, taken February 12, 2026 |
| 26 | Meet and Confer letter sent by counsel for Family Defendants to counsel for Jessica DeVita, dated April 28, 2026 |

DECL OF RICKETTS & EXS ISO PLTFS' OPP TO
FAMILY DEFTS *EX PARTE* TO CONT HRG/BRIEF

Exh. 25

CERTIFIED COPY



# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

M.S., a minor vs Oliver Angus

Michael Angus

February 12, 2026

Ann bonnette, CSR No. 6108, Job No. 13049

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

M.S., a minor, by and through his )
guardian ad litem, Jessica DeVita; )
and I.H., a minor, by and through )
her guardian ad litem, Candance )
Hernandez, )
)
                    Plaintiffs, )
) CASE NO.
        vs. ) 2:23-CV-09957-
) SRM-MAR
OLIVER ANGUS, MICHAEL ANGUS, JAMIE )
ANGUS, MARAE CRUCE, GREGORY PITTS, )
ANTONIO SHELTON, SANTA MONICA )
MALIBU UNIFIED SCHOOL DISTRICT and )
Does 1 through 10, )
)
                    Defendants. )
_____)

IN-PERSON DEPOSITION OF MICHAEL ANGUS, taken on behalf of the Plaintiffs, at Hadsell Stormer Renik & Dai, LLP, 128 North Fair Oaks Avenue, Pasadena,California, commencing at 10:00 a.m., Thursday, February 12, 2026, before ANN BONNETTE, California C.S.R. No. 6108, Louisiana C.C.R. No. 85135, Registered Professional Reporter No. 22501, Certified Manager of Reporting Services, AAERT Certified Digital Court Reporter and Transcriptionist No. D-368, pursuant to Notice.

* * *

picture on the next page that is a picture of a post with a young man in the bottom picture of that post.

Do you see that picture?

A    Uh-huh.

Q    Need a "yes."

A    Yes.

Q    Is that young man in the bottom picture of the post the young man you understand to be M.S.?

A    I believe so.

Q    Okay.  All right.  If you turn the page to the next page, and you look at the -- what is probably the very middle of the page, there is a paragraph that starts, "On September 13, 2025."

See that paragraph?

A    Yes.

Q    Okay.  It says on September 20 -- I mean, "On September 13, 2025, a Reddit account belonging to Oliver Angus was identified.  The account handle is OzoneMusicOpinions, and the account is open and public."

Have you ever seen or become familiar with an account handle for username OzoneMusicOpinions?

A    I believe -- I believe so.

Yes.  I believe so.

Q    Okay.  And that's one of Oliver's?

MS. HIRJI:  Objection.  Lacks foundation.  Lacks

Michael Angus                                                   Page 116

personal knowledge.

BY MR. ORANGE:

Q    You can answer.

A    Where I was going to go in my prior answer was to say his accounts were hacked because he uses simple passwords.  And I don't know which of these -- one of them was used by somebody else, and then it was shut down.

One of them -- again, now I'm maybe confusing different apps and sites, but another he lost access to because it was hacked.

Q    Okay.  Okay.  And when you say he lost access to one of them, was it one of the ozone ones that he lost access to?

A    I believe so, yes.

Q    Okay.  If we look at the next paragraph after that one, starting with, "This account was."

Do you see that paragraph?

A    I do.

Q    All right.  The very last line -- or actually, one line up from the very last line of that paragraph, there's a bold-faced username, Professional-Goal582.

Do you see that one there?

A    I do.

Q    Okay.  Are you familiar with that username at all?

Michael Angus                                                    Page 117

A    I think that was one of his at one point.

Q    Okay.  And what would the "Goal582" reference, if anything?

MS. HIRJI:  Seeks speculative testimony.

MR. ORANGE:  I don't know.  The "O" was for ozone.  I was just asking, Rosa.

BY MR. ORANGE:

Q    Do you know?

A    No idea.

Q    Okay.  If we turn the page, on this page, there appear to be two posts by OzoneMusicOpinions with pictures attached.

Are these pictures of Oliver?

MS. HIRJI:  Objection.  Lacks foundation as to the two posts.

You can answer.

THE WITNESS:  Yes.

BY MR. ORANGE:

Q    All right.  If we turn the page...

A    I'm mumbling to myself.

In his Mario Cart PJs.

Q    Are those PJs you're familiar with?

A    Yes.

Q    All right.  If we turn at the page, there's a picture of a Pokémon GO avatar for OzoneMusic.

In your knowledge and understanding, does Oliver or did Oliver, in 2023, like Pokémon GO?

A    He did.  And still does.

Q    All right.  Let's turn to page -- two pages now.

And there will be an avatar character at the top of the page with the text, "OzoneMusicOpinions."

Are you there with me?

MS. HIRJI:  Can you state the Bates numbers for the record, please.

MR. ORANGE:  Certainly.  3570.

MS. HIRJI:  Okay.

MR. ORANGE:  Thank you, Rosa.

BY MR. ORANGE:

Q    Are you there with me?

A    Yes.

Q    All right.  If we look at the paragraph of text under that avatar and text that says, "OzoneMusicOpinions," it begins with, "On this account."

Are you there with me at that paragraph?

A    Yes.

Q    Okay.  So it says:  "On this account, Angus made numerous sexual comments.  On or about November 28, 2023, Angus commented on a post that displayed a video of Taya Miller, a TikTok celebrity and content creator."

Do you know Oliver to be a fan of Taya Miller?

MS. HIRJI:  To the extent that that question includes a reading from this report, it lacks foundation and authenticity.

BY MR. ORANGE:

Q    You can answer.

A    I assume so.

Q    Well, without assuming, because I know Rosa would have an objection to that.

Have you ever heard him mention Taya Miller?

A    No.

Q    Okay.  The next line says:  "Angus' comment read 'I'd legit kidnap her boyfriend and starve him in a random basement in order to get a shot with her.'"

Have you ever heard Oliver mention kidnapping and starving anyone's boyfriend in the basement?

MS. HIRJI:  Objection.  To the extent that that question is -- question includes reading out of a report that purports to obtain information from something online, it lacks authenticity and lacks foundation, and the question itself seeks -- calls for speculation.

THE WITNESS:  I've never heard him say or think anything remotely like that.  And I did go through his Reddit posts with him at one point when I became aware of this and talked to him about it being inappropriate.

And in addition to that, I did look through the

Michael Angus                                                    Page 120

others.  And it would appear he's parroting stuff that other kids have said.  And there was a litany of this stuff throughout these things, and that's apparently how some of these TikTok celebrities make money.

BY MR. ORANGE:

Q    When you say you went with him to let him -- went with him through the Reddit posts to let him know that this material is inappropriate, when was that?

A    I don't recall.  When we became aware of it.

Q    Aware of what?

A    Aware of the post.

Q    And how did you become aware?

A    I don't recall.  I'm sure it was through some of this proceeding.

Q    Okay.  This proceeding, being the lawsuit?

A    Yes.

Q    And when you let him know that it's inappropriate, what did you tell him about?

A    Would have been talked about online, things that you say will not be taken as you mean them in jest, can be taken out of context and used in ways to paint you as a bad person.  If someone read that and assumed that you meant those words, what would you think?

He said, well, that would be crazy.

But that's how this works.  You do not get to

tell someone how to read your words and how to think about it.  He doesn't have the capacity to think that way.

And then, you know, of top of that, disrespectful to women, all of the things that you want your kids to do better at.

Q    And you said you talked to him about Reddit and the others.  When you say "the others," is that the other, I guess, services like Reddit?

MS. HIRJI:  Misstates testimony.

THE WITNESS:  I don't know if I was referring to others being the other things that you have in here.  I'm not sure what I --

BY MR. ORANGE:

Q    That's fair.  We'll get to them.

Okay.  So on how many occasions did you talk to him about these posts?  Was it just that one occasion?

MS. HIRJI:  Vague and ambiguous.

THE WITNESS:  We talked to him about things multiple times because a component -- a significant component of his disability is the fact that he doesn't retain information and doesn't remember things.

So an example:  I put medicine on this foot two nights ago and walked out of the room to get him a glass of water and came back in, and he said, "Are you going to put the medicine on my foot or what?"

I said, "Oliver, I just did that."

"No, you didn't.  It's right here."

"Oliver, look at your foot."

He just -- he doesn't remember and can't remember things that are -- that happened five minutes ago.  So it's -- one of the things that we do is to talk to him about things repeatedly to reinforce.

So, yes, I spoke to him about it on multiple occasions.

BY MR. ORANGE:

Q    After you spoke to him about it, did he take the post down?

A    We did that together.  So the accounts where we were able to do it, we did it.

Some accounts, as I said, had been hacked.  And we couldn't get access, we couldn't delete them.  You couldn't change anything about them.

Q    Okay.  And did he agree to not put them up anymore?

A    Yes.

Q    All right.  Let's turn to Bates No. Page 3572.

And on this page, there are -- appear to be a list of Reddit groups that OzoneMusicOpinions posted to. And there are one, two, three, four, five, six, seven of those groups.

Do you see those there?

A    I see names of PDFs.  Is that what you're talking about?

Q    Yes.

I answered a question.  I'm not supposed to.  All right.

A    Gotcha.

Q    All right.  All right.

Okay.  So looking at the names of the PDFs, celebasspussymouth, cosplaygirls, fastandfurious, jerkofftoceleb, leamartineznsfw, ratemyrack, and tayamillerof.

Should these have been materials that were stopped by the filter you mentioned earlier?

MS. HIRJI:  Objection.  Assumes facts not in evidence, lacks foundation as to the authenticity of this list of PDFs that counsel has read off.  Calls for speculation.

BY MR. ORANGE:

Q    You can answer.

A    If they're PDFs, it appears that these are names that your investigators gave to the PDF file itself.  So it wouldn't have crossed his phone.

Q    Okay.  If these were the names of the PDF that would have come to his device, should the filters that you

STATE OF CALIFORNIA        )
                          ) ss.
COUNTY OF LOS ANGELES      )


        I, ANN BONNETTE, C.S.R. No. 6108, do hereby certify:

        That prior to being examined, the witness named in the foregoing deposition, MICHAEL ANGUS, was by me administered an oath to testify the truth, the whole truth, and nothing but the truth;

        That said deposition was taken before me at the time and place therein set forth and was taken down by me in shorthand and transcribed into computer-generated text under my direction and supervision; and I hereby certify the foregoing transcript of my shorthand notes so taken.

        I further certify that I am neither counsel for nor related to any party to said action nor in any way interested in the outcome thereof.

        IN WITNESS WHEREOF, I have hereunto subscribed my name this 20th day of February, 2026.


                                        _Ann Bonnette_
                                        ANN BONNETTE

Exh. 26

# Hirji, Chau & Rodriguez, LLP

April 28, 2026

Anoushe S. Marandjian
BREMER WHYTE BROWN & O'MEARA, LLP
21215 Burbank Blvd., Suite 500
Woodland Hills, CA 91367

PROFESSIONAL DOCUMENT SERVICES, INC.
875 Patriot Dr., Suite D
Moorpark, CA 93021

SENT VIA:    Electronic correspondence to *amarandjian@bremerwhyte.com &
             info@professionaldocumentservicesinc.com*

**Re:  O.A. et al. v. Jessica DeVita; Superior Court of California, County of Los Angeles;
      Case No. 24STCV07875
      Meet and Confer Re Motion for Quash Re Defendant's Third Party Subpoenas**

Dear Mrs. Marandjian,

As you are aware, my office represents O.A., by and through his Guardian ad Litem, J.A., J.A., and M.A. ("the Family Plaintiffs"). My office is requesting a meet and confer to discuss the Family Plaintiffs intentions to file a motion to quash as to the Defendant DeVita's seventeen (17) subpoenas to third parties issued on April 8, 2026.

California Code of Civil Procedure section 2017.010 provides that discovery is permitted only regarding matters that are not privileged and that are relevant to the subject matter involved in the pending action or reasonably calculated to lead to the discovery of admissible evidence. In addition, under California Code of Civil Procedure section 2017.020, the trial court is authorized to limit discovery where "the burden, expense, or intrusiveness of that discovery clearly outweighs the likelihood that the information sought will lead to the discovery of admissible evidence." *Irvington-Moore, Inc. v. Superior Court*, 14 Cal. App. 4th 733 (1993).

5173 Overland Avenue, Culver City, CA 90230
Tel. (310) 391-0330  Fax. (310) 943-0311  lawyer4children.com

Rosa K. Hirji
Managing Partner
rosa@rkhlawoffice.com

Jenny Chau
Senior Partner
jenny@rkhlawoffice.com

Alexander Rodriguez
Partner
alex@rkhlawoffice.com

Robert D. Skeels
Senior Attorney
robert@rkhlawoffice.com

Ariel Harman-Holmes
Associate Attorney
ariel@rkhlawoffice.com

Tania Garcia
Administrative Assistant
tania@rkhlawoffice.com

Travis Wester
Paralegal
travis@rkhlawoffice.com

April 28, 2026

Further, subpoenas must comply with the bounds of proper discovery. See CCP § 2025.420. While the scope of civil discovery is broad, it is not limitless. *Calcor Space Facility, Inc. v. Superior Court*, 53 Cal. App. 4th 216, 223 (1997). "When discovery requests are grossly overbroad on their face and hence do not appear reasonably related to a legitimate discovery need, a reasonable inference can be drawn of an intent to harass and improperly burden." *Obregon v. Superior Court*, 67 Cal. App. 4th 424, 431 (1998). Furthermore, a party issuing a business records subpoena must identify with reasonable particularity the documents sought, tailoring its demands to the subject matter of the litigation; otherwise, the request is overly broad and not reasonably particularized. CCP § 2020.410(a).

## A. Records Pertaining to O.A.

On April 8, 2026, Defendant DeVita issued subpoenas seeking records pertaining to O.A. to the following providers:
(1) Santa Monica Malibu Unified School District;
(2) Fusion Academy;
(3) Dr. Anshu Batra;
(4) Joseph Taravella, Ph.D.;
(5) Dr. Ruth Ziemba;
(6) Dr. Richard Boles;
(7) Dr. Lev Gottlieb;
(8) UCLA Health Systems – M.R.;
(9) UCLA Health Systems – Billing;
(10) UCLA Health Systems - Radiology;
(11) Dr. Manny Tau, Psy. D.;
(12) Westside Regional Center;
(13) Beyond Karate; and
(14) Lagerlof, LLP.

Here, Plaintiffs intend to move to quash these subpoenas because these subpoenas are impermissibly overbroad in time and scope, and invade Plaintiff O.A.'s right to privacy under Health Insurance Portability and Accountability Act ("HIPAA"), the Welfare and Institution Code ("WIC"), Family Educational Rights and Privacy Act of 1974 ("FERPA"), and California Constitutions, Article 1, Section 1. Further, Defendant DeVita's subpoenas are overbroad and seeks irrelevant information that serves no other purpose than to harass, annoy, embarrass, and cause undue burden and expense of Plaintiffs. These subpoenas are overbroad in scope because they seek records that have no relevance to the injuries or treatment claimed in this matter, including but not limited to: "cumulative and academic record of O.A.", "all documents reflecting O.A.'s medical, behavioral, or mental health condition", "all Individualized Education Plans ("IEP"), intervention plans, assessment data….", "all correspondences, including all letters and emails…", and "all documents filed in support of obtaining a conservatorship of any kind for O.A….." from "January 1, 2016 to the present".

Although the allegations in this case arise from Defendant DeVita's defamation and intentional infliction of emotional distress that occurred on or around May 2023, Defendant improperly seeks **more than seven years** of pre-incident records, encompassing highly sensitive and constitutionally protected information of a minor that bears no reasonable relationship to the

2

April 28, 2026

issues in this litigation. Defendant DeVita is engaging in a fishing expedition into Plaintiff's records by seeking **more than seven years** of overbroad and unrelated medical, health, educational, and conservatorship records that are not relevant to Plaintiff's injuries in this litigation.

Based on the foregoing and to avoid motion practice, Plaintiff contends that the subpoenas directed to (1) Santa Monica-Malibu Unified School District; (2) Fusion Academy; (3) Dr. Anshu Batra; (4) Dr. Joseph Taravella, Ph.D.; (5) Dr. Ruth Ziemba; (6) Dr. Richard Boles; (8) UCLA Health Systems – M.R.; (9) UCLA Health Systems – Billing; (10) UCLA Health Systems Radiology; and (13) Beyond Karate should all be limited in scope and time. Plaintiff contends that all aforementioned subpoenas should be limited in time to January 2022 to present, except the subpoena directed to (9) UCLA Health Systems – Billing should be limited in time to May 2023 to present because O.A. did not incur special damages (medical expenses) until after the defamatory actions occurred on or around May 2023.

In regard to (1) Santa Monica-Malibu Unified School District, the scope should be limited to records related to the disputed allegation that Plaintiff O.A. raped or assaulted or threatened Defendant DeVita's son, M.S. The subpoena should not include communications or documents during related to special education due process proceedings, authorized by law, including but not limited to settlement communications and settlement agreements that are intended to remain confidential between Plaintiffs and Santa Monica-Malibu Unified School District pursuant to the Individuals with Disabilities Education Act. See 42 U.S.C. §1415; 5 C.C.R. §3082; 20 U.S.C. §1232g(a); Cal. Educ. Code §56404(e)(5); *Rim of the World Unified School District v. Superior Court*, 104 Cal.App.4th 1393 (2002).

In regard to (2) Fusion Academy, the scope should be limited to only billing records.

In regards to (3) Dr. Batra, (4) Dr. Taravella, (5) Dr. Ziemba, (6) Dr. Boles, (8) UCLA Health Systems – M.R, and (10) UCLA Health Systems Radiology, the scope should be limited to only treatment records, communications, and billing records; and should not include any educational records.

In regard to (13) Beyond Karate, the scope should be limited to only employment records.

In regard to the subpoenas directed to (7) Dr. Lev Gottlieb and (11) Dr. Manny Tau, Plaintiff contends these subpoenas should be quashed in their entirety because Defendant is prematurely seeking expert reports and records. Plaintiff contends the preliminary observations of Dr. Gottlieb and Dr. Tau are confidential and protected by the attorney work product doctrine. Furthermore, CCP §2034.210 specifies the timing and procedure for simultaneous exchange of expert information, timing of such demand, the language necessary in the demand. Defendant DeVita's attempt to obtain records from Dr. Gottlieb and Dr. Tau earlier than CCP §2034.210 allows is a violation of the statutory procedures, and thus Defendant DeVita's subpoenas to Dr. Gottlieb and Dr. Tau should be quashed in its entirety.

In regard to the subpoena directed to (12) Westside Regional Center, Plaintiff contends this subpoena should be quashed in its entirety. The Regional Centers are the main agencies that are

3

April 28, 2026

responsible for carrying out the Lanterman Act under Welfare and Institutions Code §§ 4500 et seq. The Lanterman Act is a state law that guarantees individuals with developmental disabilities the right to services and supports they need to live more independent, productive, and normal lives in their communities. Regional Centers are responsible for determining whether an individual is qualified for services, evaluate the individual's needs and strengths that guide service planning. WIC § 4514 states in pertinent part, that "[a]ll information and records obtained in the course of providing intake, assessment and services...to persons with developmental disabilities shall be confidential...Information and records shall be disclosed only in the following cases..." None of the exceptions to disclosure of this information applies here, and thus Defendant DeVita's subpoena to Westside Regional Center should be quashed in its entirety.

Lastly, in regard to the subpoena directed to (14) Lagarlof, LLP (probate attorneys), Plaintiff contends this subpoena should be quashed in its entirety because Defendant seeks conservatorship records that are sealed and confidential under the California probate code.

### B. <u>Records Pertaining to J.A.</u>

On April 8, 2026, Defendant DeVita issued subpoenas seeking records pertaining to J.A. to the following provider: (1) Denis A. Perez, LCSW.

Here, Plaintiffs intend to move to quash this subpoena because it is impermissibly overbroad in time and scope, and invade Plaintiff J.A.'s right to privacy under HIPAA and California Constitutions, Article 1, Section 1. Further, Defendant DeVita's subpoena is overbroad and seeks irrelevant information that serves no other purpose than to harass, annoy, embarrass, and cause undue burden and expense of Plaintiffs. The subpoena is overbroad in scope because it seeks records that have no relevance to the injuries or treatment claimed in this matter, including but not limited to: "all records, reports, charts, histories, including but not limited to sign-in sheets, doctor's notes, nurses' notes, SOAP notes, emergency room records, correspondence, memorandum, pharmacy/prescription records, photographs, laboratory reports, statements, patient information sheets, including but not limited to all therapy notes, psychosocial evaluations, reevaluations, or assessments, and all other records" from "January 1, 2016 to the present".

Although the allegations in this case arise from Defendant DeVita's defamation and intentional infliction of emotional distress that occurred on or around May 2023, Defendant improperly seeks **<u>more than seven years</u>** of pre-incident records, encompassing highly sensitive and constitutionally protected information that bears no reasonable relationship to the issues in this litigation. Defendant DeVita is engaging in a fishing expedition into Plaintiff's records by seeking **<u>more than seven years</u>** of overbroad and unrelated medical and health records that are not relevant to Plaintiff's injuries in this litigation.

Based on the foregoing and to avoid motion practice, Plaintiff J.A. contends that the subpoena directed to (1) Denis A. Perez, LCSW should all be limited in time to January 2022 to present, and limited in scope to only treatment records.

April 28, 2026

**C.  <u>Records Pertaining to M.A.</u>**

On April 8, 2026, Defendant DeVita issued subpoenas seeking records pertaining to M.A. to the following providers: (1) Univision Emerging Networks, LLC C/O CT Corp; and (2) Sinclair Broadcasting Group C/O Ct Corp.

Here, Plaintiffs intend to move to quash these subpoenas because these subpoenas are impermissibly overbroad in time and scope, and invade Plaintiff M.A.'s right to privacy because Plaintiff M.A. is not claiming losses related to his employment. See Exhibit A, Plf. M.A.'s June 3, 2025 Response to Defendant's Form Interrogatories Nos. 8.1-8.8. Further, Defendant DeVita's subpoenas are overbroad and seeks irrelevant information and serves no other purpose than to harass, annoy, embarrass, and cause undue burden and expense of Plaintiffs. These subpoenas are overbroad in scope because they seek employment records that have no relevance to the injuries or treatment claimed in this matter, including but not limited to: "employment contract", "resume", "all job duties", "records of the date of initial employment at your entity", "All documents reflecting how bonuses are earned by Michael Angus, including bonus structures", "all documents reflecting bonuses of any kind that were received", "all documents reflecting how promotions are earned by [M.A.], including promotion structures", "all performance reviews", "all documents reflecting eligibility for promotions", "all documents reflecting promotions received", "all payroll records reflecting time off work for any reason, including for vacation, personal day, sick days, flex days or any other reason or category", "all payroll records reflecting pay if any bonuses are calculated as a percentage of an employee's annual base pay…", "all documents reflecting requests to take time off, including all doctor's notes, correspondence or memorandums", "all documents listing all abbreviations used in payroll records, including for vacation, personal days, sick days, flex days or for any other reason or category", "all documents reflecting that M.A. has cancelled meetings due to personal reasons, including due accusations against his son, including all correspondences, including but not limited to: emails, text messages, messages, memorandums, notes, calendar entries, reports, and performance reviews", "all documents reflecting M.A. has been unable to travel due to personal reasons, including due to accusations against his son, including all correspondences, including but not limited to: emails, text messages, messages, memorandums, notes, calendar entries, reports, and performance reviews"; "all documents reflecting that M.A. has been unable to meet essential aspects of his employment due to personal reasons, including due to accusations against his son: including but not limited to: all correspondences, including emails, text messages, messages, memorandums, notes, calendar entries, reports, and performance reviews"; and "all documents reflecting [M.A.] disclosing or discussing accusations against his son O.A. including but not limited to with the CEO he reports to, including, but not limited to all correspondences, emails, text messages, messages, memorandums, notes, calendar entries, reports, and performance reviews" ... pertaining to Plaintiff M.A. from 01/01/2017 to the present.

Plaintiff M.A. is not claiming any loss of income or earning capacity, or seeking any damages for loss of employment, therefore Defendant DeVita's subpoenas directed to his currently employer, (1) Univision Emerging Networks, LLC, and previous employer, (2) Sinclair Broadcasting Group, should be quashed in their entirety because they are not relevant to claims, injuries, or defenses in this litigation. Defendant DeVita subpoenas are nothing more than a fishing expedition into Plaintiff's private employment records. Please confirm that Defendant DeVita will withdraw the subpoenas directed to (1) Univision Emerging Networks, LLC, and (2)

April 28, 2026

Sinclair Broadcasting Group.

**D. <u>Deadlines and Availability to Meet and Confer</u>**

Currently the subpoenas command production May 11, 2026, and the last day to provide notice to the witnesses and depo officer as to a motion to quash is **May 6, 2026**. CCP §§ 1985.3(g), 1985.6(f)(1). In order to avoid unnecessary motion practice, Plaintiffs request that Defendant withdraw the subpoenas directed to (1) Univision Emerging Networks, LLC; (2) Sinclair Broadcasting Group; (7) Dr. Lev Gottlieb; (11) Dr. Manny Tau; (12) Westside Regional Center; and (14) Lagarlof, LLP; notify all custodians of the withdrawal no later than May 5, 2026, and provide Plaintiffs with written confirmation of the same. Furthermore, Plaintiffs request that Defendant narrow the rest of the aforementioned subpoenas as indicated above, notify all custodians of the narrowed scope no later than May 5, 2026, and provide Plaintiffs with written confirmation of the same. Absent timely withdraw and notice of narrowed scope, Plaintiffs will proceed with motions to quash.

Please note that pursuant to California Code of Civil Procedure section 1987.1, there is no requirement to meet and confer prior to filing a motion to quash a subpoena. However, in order to avoid unnecessary litigation, please provide your available to discuss the contents of this letter between April 29 and May 5, 2026, and engage in a good faith meet and confer to narrow your requests.

I appreciate your prompt attention to this matter and hope we can resolve these issues without court intervention. If we don't hear from Defendant by May 5, 2026, then the Plaintiffs will move forward with filing motions to quash forthwith.

Sincerely,

Alexander F. Rodriguez
Attorney for the Family Plaintiffs

6

# EXHIBIT A

Rosa K. Hirji (SBN 204722)
  *rosa@rkhlawoffice.com*
Alexander F. Rodriguez (SBN 322700)
  *alex@rkhlawoffice.com*
**HIRJI, CHAU & RODRIGUEZ, LLP**
5173 Overland Avenue
Culver City, CA 90230
Tel: (310) 391-0330 // Fax: (310) 943-0311

*Attorneys for Plaintiffs O.A., M.A., and J.A.*

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| O.A., by and through his Guardian ad Litem, J.A., J.A., and M.A.,<br><br>Plaintiffs,<br><br>v.<br><br>Jessica DeVita,<br><br>Defendant. | Case Number:　24STCV07875<br><br>**PLAINTIFF M.A.'S RESPONSE TO DEFENDANT JESSICA DEVITA'S FORM INTERROGATORIES, SET ONE**<br><br>Judge:　Dean J. Kitchens<br>Department:　30<br><br>Complaint Filed:　March 28, 2024<br>Trial Date:　July 6, 2026 |

PROPOUNDING PARTY:　Defendant Jessica DeVita

RESPONDING PARTY:　Plaintiff M.A.

SET NUMBER:　ONE

---

**1**

**PLAINTIFF M.A.'S RESPONSE TO DEF. JESSICA DEVITA'S FORM INTERROGATORIES, SET ONE**

(b)     the name, ADDRESS, and telephone number of each PERSON who has a copy of it; and

(c)     the amount of damage stated.

**RESPONSE TO FORM INTERROGATORY NO. 7.2:**

No.

**FORM INTERROGATORY NO. 7.3:**

Has any item of property referred to in your answer to interrogatory 7.1 been repaired? If so, for each item state:

(a)     the date repaired;

(b)     the description of the repair;

(c)     the repair cost;

(d)     the name, ADDRESS, and telephone number of the PERSON who repaired it;

(e)     the name, ADDRESS, and telephone number of the PERSON who paid for the repair.

**RESPONSE TO FORM INTERROGATORY NO. 7.3:**

No.

**FORM INTERROGATORY NO. 8.1:**

Do you attribute any loss of income or earning capacity to the INCIDENT?

**RESPONSE TO FORM INTERROGATORY NO. 8.1:**

No.

**FORM INTERROGATORY NO. 8.2:**

State:

(a)     the nature of your work;

(b)     your job title at the time of the INCIDENT; and

(c)     the date your employment began.

//

**RESPONSE TO FORM INTERROGATORY NO. 8.2:**

Responding Party objects to this interrogatory on the grounds that it is not relevant to the claims or defenses in this case as Responding Party is not claiming losses related to his employment.

//

---

9

**PLAINTIFF M.A.'S RESPONSE TO DEF. JESSICA DEVITA'S FORM INTERROGATORIES, SET ONE**

**FORM INTERROGATORY NO. 8.3:**

State the last date before the INCIDENT that you worked for compensation.

**RESPONSE TO FORM INTERROGATORY NO. 8.3:**

Responding Party objects to this interrogatory on the grounds that it is not relevant to the claims or defenses in this case, as Responding Party is not claiming losses related to his employment.

**FORM INTERROGATORY NO. 8.4:**

State your monthly income at the time of the INCIDENT and how the amount was calculated.

**RESPONSE TO FORM INTERROGATORY NO. 8.4:**

Responding Party objects to this interrogatory on the grounds that it is not relevant to the claims or defenses in this case as Responding Party is not claiming losses related to his employment.

**FORM INTERROGATORY NO. 8.5:**

State the date you returned to work at each place of employment following the INCIDENT.

**RESPONSE TO FORM INTERROGATORY NO. 8.5:**

Responding Party objects to this interrogatory on the grounds that it is not relevant to the claims or defenses in this case as Responding Party is not claiming losses related to his employment.

**FORM INTERROGATORY NO. 8.6:**

State the dates you did not work and for which you lost income as a result of the INCIDENT.

**RESPONSE TO FORM INTERROGATORY NO. 8.6:**

Responding Party objects to this interrogatory on the grounds that it is not relevant to the claims or defenses in this case as Responding Party is not claiming losses related to his employment.

**FORM INTERROGATORY NO. 8.7:**

State the total income you have lost to date as a result of the INCIDENT and how the amount was calculated.

**RESPONSE TO FORM INTERROGATORY NO. 8.7:**

Responding Party objects to this interrogatory on the grounds that it is not relevant to the claims

**10**
**PLAINTIFF M.A.'S RESPONSE TO DEF. JESSICA DEVITA'S FORM INTERROGATORIES, SET ONE**

or defenses in this case as Responding Party is not claiming losses related to his employment.

**FORM INTERROGATORY NO. 8.8:**

Will you lose income in the future as a result of the INCIDENT? If so, state:

(a)    the facts upon which you base this contention;

(b)    an estimate of the amount;

(c)    an estimate of how long you will be unable to work; and

(d)    how the claim for future income is calculated.

**RESPONSE TO FORM INTERROGATORY NO. 8.8:**

Responding Party objects to this interrogatory on the grounds that it is not relevant to the claims or defenses in this case as Responding Party is not claiming losses related to his employment.

**FORM INTERROGATORY NO. 9.1:**

Are there any other damages that you attribute to the INCIDENT? If so, for each item of damage state:

(a)    the nature;

(b)    the date it occurred;

(c)    the amount; and

(d)    the name, ADDRESS, and telephone number of each PERSON to whom an obligation was incurred.

**RESPONSE TO FORM INTERROGATORY NO. 9.1:**

Responding Party objects to this interrogatory on the grounds that it is vague, ambiguous and overbroad as to the term "INCIDENT." The term "other damages" is not clearly defined, leaving uncertainty as to whether it refers to damages beyond those previously disclosed or damages of a different nature. Additionally, the request for the "amount" of each item of damage may require speculation or estimation, which could be unduly burdensome without further clarification. Responding Party further objects to this interrogatory to the extent that it prematurely seeks expert opinion, and information which is protected by the attorney-client work product doctrine. Without waiving said objections, Responding Party responds as follows:

Yes. I incurred special damages related to O.A.

---

**11**
**PLAINTIFF M.A.'S RESPONSE TO DEF. JESSICA DEVITA'S FORM INTERROGATORIES, SET ONE**

No. Responding Party refers Propounding Party to his Complaint for Damages in this matter.

**FORM INTERROGATORY NO. 14.2:**

Was any PERSON cited or charged with a violation of any statute, ordinance, or regulation as a result of this INCIDENT? If so, for each PERSON state:

(a)      the name, ADDRESS, and telephone number of the PERSON;

(b)      the statute, ordinance, or regulation allegedly violated;

(c)      whether the PERSON entered a plea in response to the citation or charge and, if so, the plea entered; and

(d)      the name and ADDRESS of the court or administrative agency, names of the parties, and case number.

**RESPONSE TO FORM INTERROGATORY NO. 14.2:**

No, as to Responding Party and Plaintiffs in this matter. As to other PERSON's it is unknown to Responding Party.

Responding Party reserves the right to supplement this response when new information becomes available.

DATED: June 3, 2025                                    HIRJI, CHAU & RODRIGUEZ, LLP

                                                        _____
                                                        Rosa K. Hirji
                                                        Attorney for Plaintiffs O.A., J.A., and M.A.

---

**23**
**PLAINTIFF M.A.'S RESPONSE TO DEF. JESSICA DEVITA'S FORM INTERROGATORIES, SET ONE**

CONFIDENTIAL [O.A., et al. v. DeVita | 24STCV07875]

**VERIFICATION**

I, M.A., declare:

I have read the foregoing **PLAINTIFF M.A.'S RESPONSE TO DEFENDANT JESSICA DEVITA'S FORM INTERROGATORIES, SET ONE** and know its contents. The facts alleged therein are true of my own personal knowledge except for those facts which are alleged on information and belief, and, as to those facts, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct:

Executed on June 3, 2025 in Los Angeles, California.



M.A.

---

**1**
**VERIFICATION**

**PROOF OF SERVICE**

*O.A., et al. v. DeVita* [24STCV07875]

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, California. I am over the age of 18 and not a party to the within action. My business address is the Law Offices of Hirji & Chau, LLP, 5173 Overland Avenue, Culver City, 90230.

On June 3, 2025, I served the foregoing documents described as:

**PLAINTIFF M.A.'S RESPONSE TO DEFENDANT JESSICA DEVITA'S FORM INTERROGATORIES, SET ONE**

on all interested parties in this action by placing a true copy thereof enclosed in sealed enveloped address as stated below to:

Anoushe S. Marandjian                          **Attorneys for Defendant**
*amarandjian@bremerwhyte.com*
Jack Briscoe
*jbriscoe@bremerwhyte.com*
BREMER WHYTE BROWN & O'MEARA, LLP
21215 Burbank Blvd., Suite 500
Woodland Hills, CA 91367

☐ **BY MAIL** – I deposited such envelope in the mail at Culver City, CA. The envelope was mailed with postage thereof fully prepaid. I am "readily familiar" with the firm's practices of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid in Culver City, CA. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒ **BY ELECTRONIC TRANSMISSION** – I transmitted a PDF version of this document by electronic mail to the party(s) identified above using the address(es) indicated.

☒ (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on June 3, 2025 at Culver City, California.

_____
TRAVIS WESTER

**1**
**PROOF OF SERVICE**