Rosa K. Hirji (SBN 204722)
*rosa@rkhlawoffice.com*
Alexander F. Rodriguez (SBN 322700)
*alex@rkhlawoffice.com*
Ariel S. Harman-Holmes (SBN 315234)
*ariel@rkhlawoffice.com*
**HIRJI, CHAU & RODRIGUEZ, LLP**
5173 Overland Avenue
Culver City, CA 90230
Tel: (310) 391-0330 // Fax: (310) 943-0311

*Attorneys for Defendants* O.A., J.A., *and* M.A.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

M.S., a minor, by and through his guardian ad litem, Jessica DeVita, et al.

Plaintiff,

v.

O.A., et al.

Defendant.

CASE NO. 2:23−CV−09957-SRM-MAR
*Assigned for all purposes to the Honorable Serena R. Murillo*

**FAMILY DEFENDANTS' OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION FOR ADDITIONAL DEPOSITION TIME**

| | |
|---|---|
| Complaint Filed: | November 22, 2023 |
| TAC Filed: | October 21, 2024 |
| Discovery Cutoff: | March 13, 2026 |
| Pretrial Conference: | August 19, 2026 |
| Trial Date: | September 8, 2026 |

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiffs ask the Court, on an ex parte basis, to expand a discovery order entered only two weeks ago and reopen the completed depositions of J.A. and M.A. for four additional hours. The Application should be denied because Plaintiffs have not made the prerequisite showing for either ex parte relief or modification of the Court's scheduling order.

There is no ex parte emergency. Plaintiffs received Dr. Willison's records on May 20, 2026. Dkt. 424 at 4. They did not raise renewed depositions of J.A. or M.A. with Family Defendants until August 10, nearly three months later. Ricketts Decl., Dkt. 424 at 8. In the interim, this Court comprehensively addressed the discovery schedule and, on July 31, expressly reopened fact discovery for three limited purposes: Plaintiffs' deposition of O.A.; production of juvenile court records responsive to Requests for Production Nos. 41 and 42; and production of Dr. Willison's records. Dkt. 414 at 22 n.5. The Court did not reopen the completed depositions of J.A. or M.A.

Nor do the Willison records create a new subject of discovery. Plaintiffs' operative complaint has long alleged that J.A. and M.A. knew of dangerous conduct by O.A., failed adequately to supervise or control him, and failed to use available discipline, counseling, or therapy. Dkt. 108 ¶¶ 102–111. Plaintiffs extensively examined both parents concerning precisely those subjects. Harman-Holmes Decl. ¶¶ 4–6, 11–14, 16–19, Exs. A, C, D.

Plaintiffs went further with J.A. and specifically examined her about Dr. Willison. They identified Dr. Willison by name and asked why O.A. sought therapy from him in 2019. J.A. answered, "I don't recall." Harman-Holmes Decl. ¶ 8, Ex. B (J.A. Dep. Vol. II at 122:4–125:13). When Family Defendants' counsel referenced the then-pending dispute concerning Dr. Willison's records, Plaintiffs'

counsel expressly stated that he was "not asking questions based on the records" and was "just asking questions based on her testimony." Id. ¶ 9, Ex. B (J.A. Dep. Vol. II at 125:14–23).

The later production of documentary evidence concerning those subjects does not itself entitle Plaintiffs to repeat completed depositions. Plaintiffs had the records for nearly three months before seeking relief, and they have not identified genuinely new, witness-specific information that requires two additional hours of examination of each parent. The Court should deny the Application.

## II. RELEVANT BACKGROUND

Plaintiffs' parental-liability theory did not originate with the Willison records. The Third Amended Complaint alleges that J.A. and M.A. were on notice of O.A.'s allegedly dangerous habits or tendencies and had the opportunity and ability to control his conduct. Dkt. 108 ¶ 102. It alleges specific prior incidents that purportedly placed the parents on notice, including an alleged 2019 report to J.A., a March 2022 complaint to J.A., alleged misconduct involving I.H. in a vehicle driven by M.A., an alleged incident at the family home observed by J.A., and the later pocketknife incident allegedly reported to both parents. Id. ¶¶ 103–108. Plaintiffs further expressly alleged that J.A. and M.A. had available parental methods of control, including restrictions on computer and telephone use, and could have obtained professional assistance through counseling and therapy. Id. ¶¶ 109–111.

Plaintiffs then examined J.A. over three deposition sessions. Harman-Holmes Decl. ¶ 2. In the first session, Plaintiffs questioned her concerning incidents involving O.A. that had allegedly been reported to the parents, including the November 2022 biting incident and the later pocketknife incident, her knowledge of those events, and discipline imposed in response. Id. ¶ 4, Ex. A (J.A. Dep. Vol. I at 54:4–57:25). Plaintiffs questioned her concerning the parents' response to the biting incident, including conversations with O.A., possible

consequences, whether O.A. understood that he had hurt I.H., communications with the school, and efforts to obtain counseling. Id. ¶ 5, Ex. A (J.A. Dep. Vol. I at 68:9–73:24, 74:18–77:6). They also questioned her concerning allegations of sexual misconduct involving I.H., her efforts to determine what had occurred, supervision in the family home, and allegedly sexual electronic communications. Id. ¶ 6, Ex. A (J.A. Dep. Vol. I at 87:8–90:25, 91:1–92:20).

During J.A.'s second deposition session, Plaintiffs specifically examined her concerning O.A.'s psychotherapy. They asked when he began seeing a psychotherapist, how many psychotherapists he had seen, whether his treatment periods overlapped, and the identity of the psychotherapist he saw in 2019. Harman-Holmes Decl. ¶ 8, Ex. B (J.A. Dep. Vol. II at 122:4–125:13). Plaintiffs identified that provider as Dr. Willison and asked, "Starting with the psychotherapist that he saw in 2019, Dr. Willison, for what reasons did he seek therapy from Dr. Willison?" J.A. answered, "I don't recall." Id. When Family Defendants' counsel then raised the pending dispute concerning Dr. Willison's records, Plaintiffs' counsel stated that he was "not asking questions based on the records" and was "just asking questions based on her testimony." Id. ¶ 9, Ex. B (J.A. Dep. Vol. II at 125:14–23).

During J.A.'s third deposition session, Plaintiffs again extensively examined her regarding supervision. Plaintiffs questioned her regarding whether persons supervising O.A. were expected to report behavioral problems, whether she had observed violent or inappropriate sexual behavior, whether she disciplined O.A. based on reports that another person had been hurt, and whether supervisors reported such conduct to her. Harman-Holmes Decl. ¶ 11, Ex. C (J.A. Dep. Vol. III at 6:21–14:18). Plaintiffs examined her regarding internet supervision and parental controls, including restrictions on O.A.'s access and a later-discovered problem with those controls. Id. ¶ 12, Ex. C (J.A. Dep. Vol. III at 14:24–22:18). They asked why she and M.A. monitored O.A.'s internet use, her responsibility as his parent,

and the supervision provided when O.A. and other children were present in the home. Id. ¶ 13, Ex. C (J.A. Dep. Vol. III at 27:1–29:9). Plaintiffs also examined her concerning allegedly sexual electronic communications involving O.A. Id. ¶ 14, Ex. C (J.A. Dep. Vol. III at 55:17–60:20).

Plaintiffs conducted the same type of examination of M.A. They questioned him concerning the November 2022 biting incident, allegations concerning M.S., the pocketknife incident, the parents' responses and discipline, discussions with O.A. regarding consent, whether O.A. was in therapy, and efforts to obtain therapeutic support. Harman-Holmes Decl. ¶ 16, Ex. D (M.A. Dep. at 73:4–80:25). They questioned him concerning supervision in the family home, and M.A. testified that because of O.A.'s medical condition, "we're with him at all times," and visiting children were "[n]ever alone. Never unattended." Id. ¶ 17, Ex. D (M.A. Dep. at 98:20–99:25). Plaintiffs also examined him regarding communications from C.H. concerning O.A.'s conduct toward I.H., including alleged requests for nude or partially nude photographs. Id. ¶ 18, Ex. D (M.A. Dep. at 100:16–101:10). Finally, Plaintiffs questioned him extensively concerning parental monitoring and control of O.A.'s electronic devices and internet activity, including Apple Screen Time, adult-content filters, restrictions on contacts and applications, the effectiveness of those controls, a later-discovered software issue, use of Bark, and efforts to prevent access to explicit material. Id. ¶ 19, Ex. D (M.A. Dep. at 105:20–111:16).

Plaintiffs nevertheless completed the depositions without the Willison records. M.A.'s deposition concluded on February 12, 2026, and J.A.'s deposition concluded on March 10, 2026. Dkt. 424 at 4. Plaintiffs received Dr. Willison's records on May 20, 2026. Id. Nearly three months later, on August 10, Plaintiffs first told Family Defendants that they intended to seek additional deposition time. Ricketts Decl., Dkt. 424 at 8. Four days later, Plaintiffs filed this ex parte Application. Id.

Meanwhile, on July 31, this Court addressed the discovery schedule in detail. The Court denied Family Defendants' own motion to take additional depositions after finding that, even assuming Family Defendants had diligently pursued the underlying witnesses, they had not been diligent in seeking leave to take the additional depositions. Dkt. 414 at 21. The Court then modified the scheduling order and reopened fact discovery only for three expressly enumerated purposes. Id. at 22 n.5.

**III. ARGUMENT**

A. PLAINTIFFS HAVE NOT SHOWN AN EX PARTE EMERGENCY

Ex parte applications are "rarely justified." *Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995). The applicant must establish both that it "will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures" and that it "is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Id.* at 492. The applicant must explain the creation of the asserted emergency and show that it acted with due diligence. *Id.* at 493. Ex parte procedure is "not intended to save the day for parties who have failed to present requests when they should have." *Id.*

Plaintiffs cannot satisfy that standard. They obtained the Willison records on May 20. Dkt. 424 at 4. They therefore possessed the supposedly critical information on which their Application rests for nearly three months before first raising renewed depositions with Family Defendants on August 10. Ricketts Decl., Dkt. 424 at 8. Plaintiffs identify nothing that prevented them from seeking relief during that period.

The July 31 Order makes the absence of an emergency even clearer. Before entering that Order, the Court addressed multiple disputes concerning fact discovery, including the Willison records and Family Defendants' own request for additional depositions. Dkt. 414 at 10–15, 20–22. The Court then reopened

discovery only for three defined purposes. Id. at 22 n.5. Plaintiffs had possessed the Willison records for more than two months by then, yet did not ask the Court to include renewed depositions of J.A. or M.A.

Plaintiffs' claimed prejudice is also undermined by their refusal to stipulate to Family Defendants' deposition of Dr. Willison. Harman-Holmes Decl. ¶ 21. The Court has already recognized that Family Defendants "may have been diligent in their efforts to depose Dr. Westbrook and Dr. Willison." Dkt. 414 at 21. Dr. Willison created the records on which Plaintiffs now rely and can testify concerning their context, the treatment sessions, and communications made to him. Plaintiffs cannot establish irreparable prejudice requiring emergency reopening of two completed party depositions while refusing to stipulate to discovery from the witness who created the records.

Plaintiffs may believe renewed testimony would benefit their case. That does not establish irreparable prejudice or explain why ordinary procedures became unavailable through no fault of their own. Under *Mission Power*, the Application should be denied on that basis alone.

B. PLAINTIFFS HAVE NOT SHOWN GOOD CAUSE TO MODIFY THE COURT'S JULY 31 DISCOVERY ORDER

Rule 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Diligence is the primary focus. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). A party is diligent only if it could not reasonably meet the deadline despite diligent efforts. *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002). If the moving party was not diligent, "the inquiry should end." *Johnson*, 975 F.2d at 609.

This Court applied that standard to this case on July 31. In denying Family Defendants' motion to take additional depositions, the Court recognized that Family Defendants "may have been diligent in their efforts to depose Dr.

Westbrook and Dr. Willison," but held that diligence in pursuing those witnesses did not establish diligence in seeking the necessary leave of Court. Dkt. 414 at 21. Family Defendants' 26-day delay after the discovery cutoff was insufficient. Id.

The same distinction defeats Plaintiffs' Application. Plaintiffs devote much of their filing to their efforts to obtain Dr. Willison's records. Dkt. 424 at 2–4. Even assuming those efforts were diligent, that shows diligence in obtaining the records. It does not establish diligence in seeking to reopen J.A.'s and M.A.'s depositions after Plaintiffs obtained those records on May 20.

Plaintiffs waited nearly three months. During that period, this Court itself reconsidered the discovery schedule and entered a limited reopening order. Dkt. 414 at 22 n.5. Plaintiffs now seek another modification of that Order based on information they already possessed when the Court entered it. Under the diligence standard the Court applied only weeks ago, Plaintiffs have not shown good cause.

C. RULES 30 AND 26 DO NOT SUPPORT A BROAD SECOND EXAMINATION OF J.A. OR M.A.

Because J.A. and M.A. have already been deposed, Plaintiffs must obtain leave under Rule 30(a)(2)(A)(ii), and that leave must be consistent with Rule 26(b)(1) and (2). Fed. R. Civ. P. 30(a)(2). Rule 26 requires the Court to limit discovery that is unreasonably cumulative or duplicative or where "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C).

Repeated depositions are disfavored, and "[t]he mere fact that documents are produced after a deposition is by no means automatic grounds for a second deposition." PlayUp, Inc. v. Mintas, 344 F.R.D. 429, 433–36 (D. Nev. 2023). Rather, later-produced documents must reveal genuinely new information that could not have been addressed during the prior examination. Id. at 436–39. Plaintiffs cannot make that showing here. As set forth above, they extensively examined both parents concerning the subjects implicated by the Willison records,

including reported misconduct, parental knowledge and response, supervision, discipline, therapy, sexualized communications, and internet monitoring. Harman-Holmes Decl. ¶¶ 4–19, Exs. A–D. Plaintiffs also specifically identified Dr. Willison and asked J.A. why O.A. sought treatment from him in 2019. Id. ¶¶ 8–9, Ex. B (J.A. Dep. Vol. II at 122:4–125:23).

Plaintiffs nevertheless seek two additional hours from each parent concerning any "topics reasonably embraced by Willison's records." Dkt. 424 at 7. They do not identify particular information that was genuinely unavailable during the prior examinations, explain why the subjects could not previously have been addressed, or identify what new information is attributable to each deponent. That showing does not satisfy Rules 30 and 26.

## IV.CONCLUSION

Plaintiffs received the Willison records on May 20 but waited nearly three months to seek renewed depositions. During that interval, this Court addressed the discovery schedule, denied Family Defendants' own request for additional depositions under Rule 16's diligence standard, and expressly reopened fact discovery for three limited purposes that did not include renewed depositions of J.A. or M.A. Plaintiffs also had already extensively examined both parents concerning the underlying subjects and have not identified genuinely new, witness-specific information requiring four additional hours of testimony.

Family Defendants respectfully request that the Court deny Plaintiffs' Ex Parte Application.

DATED: August 17, 2026

HIRJI, CHAU & RODRIGUEZ, LLP

Ariel S. Harman-Holmes
Attorneys for O.A., M.A., and J.A.