Olu K. Orange, Esq. [S. B. #213653]
ORANGE LAW OFFICES, P.C.
3435 Wilshire Blvd., Suite 2910
Los Angeles, California 90010
Telephone: (213) 736-9900 / Facsimile: (213) 417-8800
Email: orangelawoffices@att.net

Dan Stormer, Esq. [S.B. # 101967]
Morgan E. Ricketts, Esq. [S.B. # 268892]
Bina Ahmad, Esq. [SB. #329387]
Kate McFarlane, Esq. [S.B. #340706]
Isabelle Geczy, Esq. [S.B. #349594]
HADSELL STORMER RENICK & DAI LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9600 / Facsimile: (626) 577-7079
Emails: dstormer@hadsellstormer.com / mricketts@hadsellstormer.com
bahmad@hadsellstormer.com / kmcfarlane@hadsellstormer.com
igeczy@hadsellstormer.com

*Attorneys for Plaintiffs M.S. and I.H.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

M.S., a minor, by and through his guardian *ad litem*, Jessica DeVita; and I.H., a minor, by and through her guardian *ad litem*, Candace Hernandez,

Plaintiffs,

v.

O.A., M.A., J.A., MARAE CRUCE, GREGORY PITTS, ANTONIO SHELTON, SANTA MONICA MALIBU UNIFIED SCHOOL DISTRICT and Does 1 through 10,

Defendants.

Case No.: 2:23-cv-09957-SRM-MAR

[Assigned to the Honorable Serena R. Murillo – Courtroom 5D]

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST ALEX RODRIGUEZ AND JENNY CHAU**

DATE: November 25, 2026
TIME: 1:30 p.m.
CRTRM: 5D

[*Filed concurrently herewith: 1) Ricketts Decl & Exs; and 2) [Prop] Order*]

Complaint filed: November 22, 2023
Discovery Cutoff: September 11, 2026
Motion Cutoff: November 27, 2026
Trial Date: September 8, 2026

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on November 25, 2026, at 1:30 p.m., or as soon as counsel may be heard in Courtroom 5D of the First Street U.S. Courthouse, 350 W 1st Street, Los Angeles, California 90012, Plaintiffs M.S., a minor, by and through his guardian *ad litem*, Jessica DeVita; and I.H., a minor, by and through her guardian *ad litem*, Candace Hernandez ("Plaintiffs"), will and hereby does move this Court for an order sanctioning counsel for Defendants, Alex Rodriguez and Jenny Chau.

This Motion is and will be based upon this Notice of Motion; the pleadings and records on file with this Court; the concurrently filed Declarations and accompanying exhibits; any evidence of which the Court may take judicial notice prior to or at the hearing of this matter; and upon such oral or documentary evidence as may be presented at the hearing of this motion.

This motion is made following two separate meet and confer efforts, pursuant to Local Rule 7-3. These discussions took place in person on May 14 and June 30, 2026. Declaration of Morgan Ricketts ("Ricketts Decl.") ¶¶ 29, 31.

Dated: September 4, 2026

Respectfully Submitted,

ORANGE LAW OFFICES

HADSELL STORMER RENICK & DAI LLP

By: /s/ - Kate McFarlane

Olu K. Orange
Dan Stormer
Morgan Ricketts
Bina Ahmad
Kate McFarlane
Isabelle Geczy
Attorneys for Plaintiffs M.S. and I.H.

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES .......... ii

I. INTRODUCTION .......... 1

II. RELEVANT BACKGROUND .......... 2

III. LEGAL STANDARD .......... 8

A. Sanctions Under 28 U.S.C. § 1927 .......... 8

B. Sanctions Under the Court's Inherent Power .......... 8

C. Sanctions Under the Central District Court's Local Civil Rules .......... 9

IV. ARGUMENT .......... 10

A. Alex Rodriguez and Jenny Chau Repeatedly Instructed Dr. Willison not to Comply with a Subpoena, and Should be Sanctioned .......... 10

V. SANCTIONS REQUEST .......... 14

VI. CONCLUSION .......... 15

Certificate of Compliance .......... 16

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Estate of Blas Through Chargualaf v. Winkler*
792 F.2d 858 (9th Cir. 1986)....9

*Chambers v. NASCO, Inc.*
501 U.S. 32 (1991)....9

*Fink v. Gomez*,
239 F.3d 989 (9th Cir. 2001)....8, 9

*Fox Indus., Inc. v. Gurovich*
No. 03–5166, 2006 WL 2882580 (E.D.N.Y. Oct. 6, 2006)....10

*Gomez v. Vernon*
255 F.3d 1118 (9th Cir. 2001)....8, 9

*Haynes v. City & County of San Francisco*
688 F.3d 984 (9th Cir. 2012)....9

*Horvath v. JP Morgan Chase & Co.*
No. 3:21-cv-01665-BTM-AGS, 2022 WL 9569264 (S.D. Cal. Oct. 13, 2022)....8, 9

*Hutto v. Finney*
437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978)....9

*In re Nucorp Energy, Inc.*
764 F.2d 655 (9th Cir. 1985)....14

*Price v. Trans Union, L.L.C.*
847 F.Supp.2d 788 (E.D.Pa.2012)....10

*Primus Auto. Fin. Serv. v. Batarse*
115 F.3d 644 (9th Cir. 1997)....9

*Raydiant Oximetry, Inc. v. ALC Med. Holdings LLC*
808 F. Supp. 3d 987 (N.D. Cal. 2025)....9, 14, 15

*Roadway Express, Inc. v. Piper*
447 U.S. 752 (1980)....8

*Robbins & Myers, Inc. v. J.M. Huber Corp.*
No. 01–201, 2011 WL 3359998 (W.D.N.Y. Aug. 3, 2011) ................................ 11

*Trulis v. Barton*
107 F.3d 685 (9th Cir. 1995)........................................................................ 8

*United States v. Blodgett*
709 F.2d 608 (9th Cir. 1983)........................................................................ 8

*Zheng v. Internet Corp. for Assigned Names & Numbers*
813 F. Supp. 3d 1135 (C.D. Cal. 2025) ........................................................ 14

**FEDERAL STATUTES AND REGULATIONS**

28 U.S.C.
§ 1927 ........................................................................................ 8, 9, 14

Federal Rules of Civil Procedure
Rule 45 .......................................................................... 3, 10, 12, 13
Rule 45(d)(2)(B)(ii)................................................................... 3, 12
Rule 45(a)(1)(C)-(D) ..................................................................... 10
Rule 45(c)(2)(B), 45(c)(3)............................................................. 10

Local Rules
Rule 37 ........................................................................................ 3
Rule 83-8.1 .................................................................................. 10
Rule 83-8.2 .................................................................................. 10
Rule 83-7 ..................................................................................... 9
Rules 83-8.1-8.2 ........................................................................... 14

# I. INTRODUCTION

Family Defendant attorneys Alex Rodriguez and Jenny Chau have repeatedly engaged in sanctionable conduct by improperly dissuading a third party from complying with a lawfully issued subpoena. Their repeated admonitions to Dr. Willison's counsel to refrain from producing records Plaintiffs subpoenaed are explicit and in writing. These admonitions are not accompanied by *any* authority to support such a position and in fact, federal courts have sanctioned counsel for less egregious attempts to interfere with the subpoena process. In addition to Mr. Rodriguez's and Ms. Chau's clear written instructions to Dr. Willison's counsel not to produce the subpoenaed documents, they filed multiple motions with this Court in an attempt to block Plaintiffs from obtaining these records. They used the threat of filing these motions to further intimidate Dr. Willison not to produce the records.

Plaintiffs expended numerous attorney hours providing authority to Dr. Willison's counsel and Family Defendants in support of compliance, opposing motion after motion filed by Family Defendants to block production, meeting and conferring with both Dr. Willison's counsel and Family Defendants' counsel, and ultimately, drafting the instant motion. The obstructionist tactics by Mr. Rodriguez and Ms. Chau confused Dr. Willison, improperly dissuaded him from complying with a subpoena, and needlessly prolonged litigation, driving up litigation costs unnecessarily. It was only after *nine months* of aggressive litigation regarding this singular subpoena that Dr. Willison finally complied and produced the subpoenaed documents, against Mr. Rodriguez and Ms. Chau's explicit instructions. These records, Plaintiffs now know, are extremely damaging to Family Defendants' case.

This Court has authority to sanction Mr. Rodriguez and Ms. Chau for their obstructionist behavior. Without this Court's intervention, Family Defendants and their counsel will be undeterred from unethical behavior to prevent the lawful discovery of damaging facts and documents. Plaintiffs respectfully request this Court sanction Mr. Rodriguez and Ms. Chau for Plaintiffs' attorneys' fees in the amount of $71,462.25 and

an additional amount of $25,000 each against Mr. Rodriguez and Ms. Chau individually, given the severity and relentlessness of their misconduct, and to deter this conduct in the future.

## II. RELEVANT BACKGROUND

Alex Rodriguez and Jenny Chau are both name partners with Hirji, Chau & Rodriguez, the law firm representing Family Defendants. Ricketts Decl. ¶ 3.

On August 1, 2025, Plaintiffs served a subpoena to Dr. Willison for records pertaining to Defendant O.A.; the date of compliance was August 20, 2025. Ricketts Decl. ¶ 4. On August 14, 2025, Family Defendants served objections to the subpoena. They sent these objections to Dr. Willison's attorney, Michael Karsaz, on August 20, 2025, the date of compliance. Ricketts Decl. ¶ 5.

On August 22, 2025, Alex Rodriguez, counsel for Defendants, wrote a meet and confer letter to Plaintiffs. Dkt. 321-1 (February 17, 2026 Declaration of Alex Rodriguez, counsel for Family Defendants). The same day, Morgan Ricketts (counsel for Plaintiffs) responded and proposed use of the same "first look procedure" that had previously been ordered in this case for Plaintiffs' medical, psychiatric and therapeutic records. *Id*.

On September 5, 2025, Ms. Ricketts and Mr. Rodriguez met and conferred by telephone at Mr. Rodriguez' request. Dkt. 321-1 (February 17, 2026 Declaration of Alex Rodriguez, counsel for Family Defendants).

On September 15, 2025, Plaintiffs' counsel, Morgan Ricketts, wrote to Mr. Karsaz to inform him that Defendants still had not filed a motion to quash, and that until there was an order in place, the subpoena remained effective. Ricketts Decl. ¶ 6.

On September 22, 2025, Mr. Karsaz responded to all counsel, noting that he was getting conflicting information from both sides. Ricketts Decl. ¶ 7. In that email, he summarized Defendants' position as follows:

> **<u>Counsel for O.A.'s Position</u>**
>
> Counsel for [O.A.] served the attached objections and advised our office that: "As to records concerning Defendant [O.A.], the [A.] Family Defendants have served

objections on your office and Plaintiffs, and do not consent to the disclosure of those records to Plaintiffs' counsel. Those objections must be resolved either by agreement or by court order, and Dr. Willison should not produce any records relating to [O.A.] unless and until that occurs." Ricketts Decl. ¶ 7.

Mr. Karsaz went on to misread Rule 45 to preclude compliance in the absence of a court order. *Id.*

At 4:36 p.m., counsel for Plaintiffs responded and pointed out the error in his reading of Rule 45(d)(2)(B)(ii), which only applies to objections by the subpoenaed party – not the party whose records are sought. Ricketts Decl. ¶ 8.

The following day, on September 23, 2025, at 9:29 a.m., Alex Rodriguez replied:

Hello Mr. Karsaz,

Please note that Plaintiffs' counsel Mrs. Morgan Ricketts has **disingenuously** left out that pursuant to Local Rule 37, on September 17, 2025, the [A.] Family Defendants provided Plaintiffs' counsel their portion of the Joint Stipulation Re Motion for a Protective Order to prohibit the production of these records, and that Plaintiffs' counsel provided their portion in the early hours this morning on September 23, 2025.

**The Family Defendants will be filing this motion shortly, and therefore, Dr. Willison should not produce Defendant [O.A.]' medical records.** Moreover, the Family Defendants have served objections, and do not consent to the disclosure of those records to Plaintiffs' counsel. **Overall, Dr. Willison should not produce any records relating to [O.A.] absent a court order.**

Best,
Alex Rodriguez

(Emphasis added.) At 9:59 a.m., Mr. Karsaz replied to ask that the parties "keep me informed of relevant court orders after the court hears the motion(s)." Ricketts Decl. ¶ 10. At 2:02 p.m., Plaintiffs' counsel replied and provided authority, including a quotation from the Rutter Guide, establishing that in federal court, the mere fact that a motion for protective order or to quash a subpoena is pending does not excuse the duty to comply with a subpoena. Ricketts Decl. ¶ 11. Ms. Ricketts requested that Dr. Willison

produce the subpoenaed records as to O.A. by that Friday (September 26, 2025). *Id.*

At 2:36 p.m., Mr. Karsaz wrote back:

> Hi Morgan,
>
> I do not know the facts of the case or its procedural history. As you must be aware, mental health records are entitled to heighten privacy protections and the continued disagreement in this case concerns me as Dr. Willison's counsel because Dr. Willison is duty bound to protect a patient's privacy.
>
> I ask all counsel, as fellow officers of the court, to either 1) agree on how this mental health records of O.A. should be produced by our office or 2) to provide me a court order instructing our office how the court wants the records produced.
>
> Thank you.
>
> Mike

Ricketts Decl. ¶ 12.

Later that day, in light of Dr. Willison's obvious discomfort with producing the contested records, Plaintiffs agreed to a process to permit him to delay production until October 1, 2025. Ricketts Decl. ¶ 13. The agreement involved the parties promptly filing a Joint Stipulation re Family Defendants' Motion to Quash, and Family Defendants immediately filing an *ex parte* to advance the hearing on that Joint Stipulation to October 1, 2025. *Id.*

On September 25, 2025, the parties filed a Joint Notice of Application to file under seal so that the sensitive portions of the parties' briefing regarding Willison's records would not be made public. Dkt. 209. On September 26, 2025, the Family Defendants filed the agreed upon *ex parte* to advance the hearing to October 1. Dkt. 212. On October 2, 2025, the Application to file under seal was granted, and the following day, Family Defendants filed the Joint Stipulations re Family Defendants' Motion to Quash and Motion for Protective Order. Dkts. 231 and 234.

However, a few days earlier, on September 30, 2025, the *ex parte* to advance the hearing to October 1 was denied – in large part because there had been no Joint Stipulation filed. Dkt. 222.

On February 17, 2026, the Family Defendants filed a second Motion to Quash Plaintiffs' subpoenas to other providers, and for Willison's records. Dkt. 320.

On March 11, 2026, the Court denied the Family Defendants' Motion to Quash, finding that O.A. had put his mental and physical condition in issue in this case and that the existing protective order was adequate to protect his interests. Dkt. 348.

On March 12, 2026, counsel for the Family Defendants, Jenny Chau, sent Mr. Karsaz a letter described as "time-sensitive" (emphasis in original), and once again advised Mr. Karsaz not to produce the subpoenaed documents. Ricketts Decl. ¶ 14.

At 2:12 p.m., Ms. Ricketts replied and again informed Mr. Karsaz that under federal law, witnesses must provide the documents by the date of compliance unless excused by court order, and noting that the date of compliance had long passed without one. Ricketts Decl. ¶ 15. Ms. Ricketts further informed Mr. Karsaz that Plaintiffs would need to prepare a motion to compel and seek attorney fees if he could not commit to production. *Id.*

On April 15, 2026, Ms. Ricketts telephoned Mr. Karsaz to discuss further, and attempted to impress upon him the fact that Dr. Willison's obligations were not excused by the pending motions. Ricketts Decl. ¶ 16. Mr. Karsaz appeared not to remember the facts; Ms. Ricketts reminded him that there had been a dispute, but that there was now a court order in place to produce, and he should produce. *Id.* He indicated that he was in trial but would produce the documents after the weekend, on April 20. *Id.*

On April 20, 2026, Ms. Ricketts again telephoned Mr. Karsaz, who indicated that he just didn't know what to do because he was not well versed in federal practice, and was getting different information from Mr. Rodriguez, but that both sides sounded persuasive. Ricketts Decl. ¶ 18.

Ms. Ricketts' phone ran out of battery and the call ended. Thereafter she emailed Mr. Karsaz, stating in part:

> The issue here is that your client is causing us to have to spend all these hours fighting about this when we're already entitled to it. [O.A.] cannot complain that you disclosed his records eight months after the compliance date when he never

got a court order staying production or quashing the subpoena. Ricketts Decl. ¶ 19.

Also on April 20, 2026, Family Defendants filed an *ex parte* to stay production of Dr. Willison's records. Dkt. 376. On April 21, 2026, Plaintiffs opposed. Dkt. 377.

On April 21, 2026, Ms. Ricketts again emailed Mr. Karsaz:

> My co-counsel is drafting our opposition as we speak. We will be moving for sanctions against Dr. Willison for our attorney fees opposing the motion for protective order, motion to quash, motion for review, and now this ex parte. None of these oppositions would have needed to be filed if your client had complied as required by the law.
>
> If you can produce the records by 2pm we will reconsider, but this is his last chance. Ricketts Decl. ¶ 20.

On April 23, 2026, Ms. Ricketts emailed Mr. Rodriguez, noting that Plaintiffs had already advised Mr. Karsaz that Plaintiffs would seek sanctions against Dr. Willison for failing to produce the records, and notifying Mr. Rodriguez that Plaintiffs would likewise seek sanctions against him for "unethical and obstructionist behavior." Ricketts Decl. ¶ 22.

On May 7, 2026, Ms. Ricketts requested a meet and confer with Mr. Karsaz regarding this motion for sanctions. Ricketts Decl. ¶ 23. On May 13, 2026 at noon, Mr. Karsaz and Ms. Ricketts met and conferred by telephone, as they are not located in the same county. *Id.* During that call, Mr. Karsaz indicated that he was prepared to produce the records, as Family Defendants had never provided any authorities showing that he was not required to do so. *Id.* Ms. Ricketts thanked him and hung up. *Id.*

At one point during one of Ms. Ricketts' telephone discussions, Mr. Karsaz eventually admitted that his client was terrified of being sued by the Family Defendants if he released the records, regardless of whether such a lawsuit would be meritorious. Ricketts Decl. ¶ 25.

At 1:51 p.m., Mr. Karsaz emailed all counsel stating that he intended to produce the unredacted records by Monday, May 18, 2026, in the afternoon, and asking for any relevant stipulations or orders no later than 11 a.m. on May 18. Ricketts Decl. ¶ 26. That same day, Mr. Rodriguez emailed Mr. Karsaz, again advising him not to produce the

subpoenaed records, stating in part that "The Family Defendants therefore respectfully contend that Dr. Willison and your office should preserve the status quo and refrain from producing the records unless and until the Court resolves the pending matters or otherwise orders production." Ricketts Decl. ¶ 27.

The next day, Family Defendants filed yet another "Emergency" *ex parte* Application to stay production of Dr. Willison's records. Dkt. 393. Plaintiffs opposed. Dkt. 394. The same day, Plaintiffs' counsel responded to Mr. Rodriguez's most recent email dissuading Mr. Karsaz from producing Dr. Willison's records, pointing out the flaws in the legal authority he cited, and warning him that his "ongoing attempts to obstruct and delay Plaintiffs' obtaining these records in violation of federal procedures are not well taken and should be sanctioned." Ricketts Decl. ¶ 28.

On May 14, 2026, Plaintiff's counsel met and conferred with Ms. Chau regarding Plaintiffs' intent to file a motion for sanctions against Mr. Rodriguez for his obstructionist tactics in regards to Dr. Willison's subpoenaed records. Ricketts Decl. ¶ 29. The lack of authority for Family Defendants' position continued during this call when Ms. Chau could not cite to a single authority supporting their repeated requests for a third party's noncompliance with a subpoena. *Id.* Instead, Ms. Chau repeatedly deflected by saying she "can't control what a third party does" and disingenuously claiming that Family Defendants never advised or instructed Dr. Willison not to produce, despite several written records showing otherwise. *Id.*

On May 20, 2026, exactly nine months after the required date of production, Dr. Willison finally complied and produced the subpoenaed records. Ricketts Decl. ¶ 30. The contents of the records are evidence of why Family Defendants went to such lengths to bury them: they completely defeat Family Defendants' defense to Plaintiffs' claims regarding notice.

On May 21, 2026, Family Defendants attempted a last ditch effort to continue to prevent the review and use of Dr. Willison's produced records in this litigation by filing a supplemental request for post-production relief. Dkt. 395. Plaintiffs again opposed.

Dkt. 396.

On June 30, 2026, Plaintiffs' counsel met and conferred with Family Defendants' counsel, Ms. Harman-Holmes, regarding adding Jenny Chau to the instant motion for sanctions for her participation in improperly advising Dr. Willison not comply with a valid subpoena. Ricketts Decl. ¶ 31.

## III. LEGAL STANDARD

### A. Sanctions Under 28 U.S.C. § 1927

The Court has statutory authority to require anyone "who so multiplies the proceedings in any case unreasonably and vexatiously. . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Section 1927 is "a penal statute designed to discourage unnecessary delay in litigation[.]" *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 759 (1980). The imposition of sanctions under § 1927 requires a finding that the person against whom the sanctions are imposed acted "recklessly or in bad faith[.]" *United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir. 1983) (citation omitted); see also *Gomez v. Vernon*, 255 F.3d 1118, 1134–35 (9th Cir. 2001). Before a party can recover excess costs under § 1927, the Court must find that the attorney created "needless proceedings" or "prolonged litigation," and that "the conduct was vexatious as well as unreasonable." *Horvath v. JP Morgan Chase & Co.,* No. 3:21-cv-01665-BTM-AGS, 2022 WL 9569264, at *2 (S.D. Cal. Oct. 13, 2022). "District courts enjoy much discretion in determining whether and how much sanctions are appropriate." *Trulis v. Barton*, 107 F.3d 685, 694 (9th Cir. 1995).

### B. Sanctions Under the Court's Inherent Power

Under the Court's inherent power, the court also may impose sanctions, including attorney fees, when a party has "'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001) (quoting *Roadway Express*, 447 U.S. at 776, 100 S.Ct. 2467). The Court's inherent power "is 'both broader and narrower than other means of imposing sanctions.' [ ] On the one

hand, the inherent power 'extends to a full range of litigation abuses.' On the other, the litigant must have 'engaged in bad faith or willful disobedience of a court's order'" to levy sanctions including attorney fees. *Fink*, 239 F.3d at 992 (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 46–47 (1991)).

A party "demonstrates bad faith by 'delaying or disrupting the litigation or hampering enforcement of a court order.'" *Primus Auto. Fin. Serv. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997)  (quoting *Hutto v. Finney*, 437 U.S. 678, 689 n.14, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978)). Bad faith is present whenever an attorney "knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Estate of Blas Through Chargualaf v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986).

"[C]ourts have substantial discretion to decide whether to award sanctions under § 1927 or their inherent power, and in what amount." *Horvath v. JP Morgan Chase & Co.,* No. 3:21-cv-01665-BTM-AGS, 2022 WL 9569264, at *2 (S.D. Cal. Oct. 13, 2022).; see *Haynes v. City & County of San Francisco*, 688 F.3d 984, 987–88 (9th Cir. 2012). Even if the Court finds Defendants' conduct to be unintentional, inherent-authority sanctions would be warranted for "conduct tantamount to bad faith ... including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001); *Raydiant Oximetry, Inc. v. ALC Med. Holdings LLC,* 808 F. Supp. 3d 987, 1004 (N.D. Cal. 2025)

**C. Sanctions Under the Central District Court's Local Civil Rules**

Finally, the District's Local Civil Rules provide for sanctions in this situation as well. Local Rule 83-7 provides that "[t]he violation of or failure to conform to any of these Local Rules may subject the offending party or counsel to: (a) monetary sanctions, if the Court finds that the conduct was willful, grossly negligent, or reckless; (b) the imposition of costs and attorneys' fees to opposing counsel, if the Court finds that the conduct rises to the level of bad faith and/or a willful disobedience of a court order; and/or (c) for any of the conduct specified in (a) and (b) above, such other sanctions as

the Court may deem appropriate under the circumstances."

Further, the Local Rules provide:

> It is the policy of the Court to discourage vexatious litigation and to provide persons who are subjected to vexatious litigation with security against the costs of defending against such litigation and appropriate orders to control such litigation. It is the intent of this rule to augment the inherent power of the Court to control vexatious litigation and nothing in this rule shall be construed to limit the Court's inherent power in that regard. L.R. 83-8.1.
>
> On its own motion or on motion of a party, after opportunity to be heard, the Court may, at any time, order a party to give security in such amount as the Court determines to be appropriate to secure the payment of any costs, sanctions or other amounts which may be awarded against a vexatious litigant, and may make such other orders as are appropriate to control the conduct of a vexatious litigant. L.R. 83-8.2.

## IV. ARGUMENT

### A. Alex Rodriguez and Jenny Chau Repeatedly Instructed Dr. Willison not to Comply with a Subpoena, and Should be Sanctioned

Rule 45 vests a party's attorney with the authority to compel production of documents or require the appearance of a non-party as set forth in the subpoena. The rule authorizes a party's attorney to issue a subpoena to a non-party to produce electronically-stored information or other documents. Fed.R.Civ.P. 45(a)(1)(C)-(D). In response, the Rule permits the subject of the subpoena to object to the production requested or move to quash or modify the subpoena. Fed.R.Civ.P. 45(c)(2)(B), 45(c)(3). "Nowhere in the Rule is it contemplated that the adversary of the party seeking the information may advise, no matter the reasons, the person commanded by the subpoena to produce the information to ignore the subpoena's command." *Price v. Trans Union, L.L.C.,* 847 F.Supp.2d 788, 794 (E.D.Pa.2012). In such scenarios, Courts have sanctioned the party who improperly advised the subject of the subpoena not to comply. *See, e.g., id.* at 795; *Fox Indus., Inc. v. Gurovich,* No. 03–5166, 2006 WL 2882580, at *2 (E.D.N.Y. Oct. 6, 2006) (exercising its inherent authority to sanction defendant to the tune of $1,000 per letter for sending third party subpoena subjects

letters advising them not to comply with plaintiff's subpoenas); *Robbins & Myers, Inc. v. J.M. Huber Corp.,* No. 01–201, 2011 WL 3359998, at *3 (W.D.N.Y. Aug. 3, 2011) (awarding sanctions where "but for [plaintiff counsel's erroneous] advice to [subpoena subject] that Defendant's subpoena should be dishonored [subject] would have timely complied without the necessity of the instant motion to compel").

Counsel for Family Defendants have spent nearly an entire year obstructing production of Dr. Willison's records by repeatedly instructing Dr. Willison not to comply with Plaintiffs' valid subpoena and filing a plethora of motions with this Court to prevent the same. The vexatious litigation tactics from Family Defendants have been ongoing throughout this case, but this strategy has been most egregiously displayed by the unethical tactics taken to stonewall and bury records which Plaintiffs now know are extremely damaging to Family Defendants' claims.

As early as September 2025, nearly a month after the date Dr. Willison was mandated to produce the subpoenaed records, it became clear that Family Defendants' counsel were engaging in sanctionable conduct by advising Dr. Willison not to produce the subpoenaed records in violation of a lawfully issued subpoena. Ricketts Decl. ¶¶ 6, 7. Although Family Defendants' counsel strategically omitted Plaintiffs' counsel from their initial communications with Dr. Willison's counsel, Mr. Karsaz, he made clear each party's position in an email on September 2022:

> Counsel for [O.A.] served the attached objections and advised our office that: "As to records concerning Defendant [O.A.], the [A.] Family Defendants have served objections on your office and Plaintiffs, and do not consent to the disclosure of those records to Plaintiffs' counsel. Those objections must be resolved either by agreement or by court order, and **Dr. Willison should not produce any records relating to [O.A.] unless and until that occurs**." (emphasis added). Ricketts Decl. ¶ 7, Ex. 4.

Despite Plaintiffs' counsel already advising Mr. Karsaz that unless and until the Court issues an order quashing the subpoena the subpoena remains effective, Mr. Karsaz was understandably unsure how to proceed upon receiving explicit instructions from Family Defendants' counsel not to produce the subpoenaed documents. Two days later,

Plaintiffs' counsel clarified with Mr. Karsaz that Family Defendants' objections do not excuse compliance with the subpoena under FRCP 45(d)(2)(B)(ii), only the objection of the person subpoenaed may do that. Ricketts Decl. ¶ 8, Ex. 5. Family Defendants counsel were included on this email and equally provided this authority. *Id.* Family Defendants' counsel, Alex Rodriguez immediately responded to these communications, reiterating that "Dr. Willison should not produce Defendant [O.A.'s] medical records," and "Dr. Willison should not produce any records relating to [O.A.] absent a court order." Ricketts Decl. ¶ 9, Ex. 6. Mr. Rodriguez provided no authority for his position in this email to Mr. Karsaz. *Id.*

Ms. Ricketts again informed both Mr. Rodriguez and Mr. Karsaz that Dr. Willison's compliance with the subpoena was not excused under rule 45, citing the Rutter Guide for further authority to support that compliance with the subpoena was not excused. Ricketts Decl. ¶ 11. Mr. Karsaz responded citing counsels' "disagreement" as the basis for not producing records, and eventually admitted that his client was terrified of being sued by the Family Defendants if he released the records, regardless of whether such a lawsuit would be meritorious. *Id.*, Ex. 8. It was clear based on Mr. Karsaz's response that Mr. Rodriguez's obstructionist tactics and baseless advisements to disobey a validly issued subpoena had worked.

In addition to dissuading Dr. Willison to comply with the subpoena, Mr. Rodriguez and Jenny Chau began abusing this Court's processes in a desperate attempt to prevent the production of the subpoenaed documents. Plaintiffs have been forced to oppose a motion for protective order, motion to quash, request for review, multiple *ex parte* applications, and engage in numerous meet and confers all relating to obtaining Dr. Willison's records.

When their motion to quash Plaintiff's subpoena for Dr. Willison's records was eventually denied in March 2026, Family Defendants' counsel continued their obstructionist tactics when Ms. Chau immediately notified Mr. Karsaz by letter that their motion to quash had been denied, but that they intended to file a request for review and

instructed Dr. Willison: "please do not produce any documents or records responsive to the subpoena at this time. Kindly hold in abeyance until the discovery dispute is resolved and you receive further written instruction from counsel or the Court." Ricketts Decl. 14, Ex. 10.

Once again, Ms. Chau failed to cite to *any* authority to support her instruction for Dr. Willison to continue violating a subpoena. *Id.* The lack of authority for their position continued during the meet and confer call with Plaintiffs' counsel relating to the instant motion, where Ms. Chau could not cite to a single authority supporting their repeated requests for a third party's noncompliance with a subpoena. Ricketts Decl. ¶ 29. Instead, Ms. Chau repeatedly deflected by saying she "can't control what a third party does" and disingenuously claiming that Family Defendants never advised or instructed Dr. Willison not to produce, despite several written records showing otherwise. She had no response to the authority Plaintiffs' counsel provided showing several cases which hold that dissuading a third party from complying with a subpoena is sanctionable conduct.

But for Mr. Rodriguez and Ms. Chau's joint, unethical, and obstructionist tactics, Dr. Willison's subpoenaed records would have been produced months before they actually were produced, and with far less litigation. Ricketts Decl. ¶ 4, Ex. 1. Now, twelve months later, an extensive record shows Mr. Rodriguez and Ms. Chau's repeated instructions to Dr. Willison not to produce, even after Plaintiffs provided authority to them repeatedly to warn them against this sanctionable conduct.

As a result, Plaintiffs have expended dozens of attorney hours fighting Family Defendants' desperate and constant attempts to stop the production of these explosive documents. Plaintiffs have spent additional hours pleading with Mr. Karsaz to comply despite the Family Defendants' unlawful attempts to dissuade Dr. Willison's production. Not only was Mr. Rodriguez and Ms. Chau's behavior a violation of clearly established case law and FRCP 45, it was also a violation of Local Rules 83-8.1-8.2 and Professional Rule of Conduct 3.1.

It is one thing for the Family Defendants to do anything within their power to

secure a victory – it is another for their counsel to enable lawless and unethical conduct by instructing third parties to disregard the law and signing documents making false and misleading representations. Mr. Rodriguez and Ms. Chau clearly crossed that line and barreled forward. This behavior will not stop absent this Court's intervention.

## V. SANCTIONS REQUEST

Mr. Rodriguez and Ms. Chau's behavior warrant sanctions for attorneys' fees and an additional amount to deter their unethical conduct going forward. The Court must determine the amount of any "excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The instant Motion is inherently related to Plaintiff's bad faith conduct relating to Dr. Willison's records, and, therefore, attorney's fees are recoverable for this Motion as well. *See In re Nucorp Energy, Inc.*, 764 F.2d 655, 659-60 (9th Cir. 1985) ("In statutory fee cases, federal courts ... have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable."); *Zheng v. Internet Corp. for Assigned Names & Numbers*, 813 F. Supp. 3d 1135, 1142 (C.D. Cal. 2025).

Plaintiffs have been forced to expend numerous attorney hours engaging with Family Defendants' obstructionist tactics, which amounted to clear vexatious litigation, including opposing their onslaught of motions, meeting and conferring with Dr. Willison's counsel and Family Defendants, and drafting this motion. Mr. Rodriguez and Ms. Chau's conduct in intimidating Dr. Willison not to comply with a subpoena resulted in Plaintiffs being forced to expend approximately $70,000 worth of attorneys' hours litigating just this *one* issue that would have otherwise been mooted by the timely production of records. Their attempts to bury these records surpassed zealous advocacy and entered the realm of sanctionable vexatious litigation, because it served no purpose other than to delay litigation, and unnecessarily harass Dr. Willison in an attempt to intimidate him against producing. Courts have awarded far more significant attorneys' fees when granting a sanctions motion for vexatious litigation, including nearly $1.5 million in one instance. *Raydiant Oximetry, Inc. v. ALC Med. Holdings LLC*, 808 F.

Supp. 3d 987, 1006 (N.D. Cal. 2025).

Here, Mr. Rodriguez and Ms. Chau egregiously wasted Plaintiffs' and this Court's time. As reflected in Plaintiffs itemized billing timesheets, the total amount of hours Plaintiffs spent litigating the Willison production was over 90 hours. Ricketts Decl. ¶ 32. The total fees for this are more than $71,462.25. *Id.*, Ex. 20. Additionally, Plaintiffs anticipate several more hours to be expended in furtherance of the instant motion, including but not limited to the continued efforts to finalize and file it, as well as to draft, finalize, and file a reply. Ricketts Decl. ¶ 33. Plaintiffs anticipate this to be at least an additional fifteen hours.

Should Plaintiffs prevail after trial, these attorneys' fees would already be recoverable. Given the devastating contents of the records that counsel sought to obstruct, merely sanctioning them the attorneys fees would do little to deter them in the future, since obtaining the records greatly increases the likelihood of a substantial verdict – and therefore paying *all* of Plaintiffs' attorney's fees. If Plaintiffs succeed at trial and move for fees, they will not be entitled to recover twice for these fees. This incentivizes hiding the documents at all costs, including egregiously unethical behavior: if they get caught, they just have to pay a small fraction of the eventual attorney's fees that would have been assessed anyway if they had not engaged in the unethical conduct. But if they don't get caught, they get a much higher chance to win at trial and avoid any liability at all.

Therefore, Plaintiffs respectfully request that in addition to the attorneys' fees, this Court use its discretion to sanction both Mr. Rodriguez and Ms. Chau individually for an additional $25,000 each to deter future unethical behavior and continued vexatious litigation.

## VI. CONCLUSION

Plaintiffs respectfully request this Court exercise its authority to sanction Mr. Rodriguez and Ms. Chau for attorneys' fees in an amount of $71,462.25 and an additional $25,000 each against Mr. Rodriguez and Ms. Chau individually to deter future

vexatious, bad faith, and unethical conduct.

Dated: September 4, 2026

Respectfully Submitted,

ORANGE LAW OFFICES

HADSELL STORMER RENICK & DAI LLP

By: /s/ - Kate McFarlane

Olu K. Orange
Dan Stormer
Morgan Ricketts
Bina Ahmad
Kate McFarlane
Isabelle Geczy
Attorneys for Plaintiffs M.S. and I.H.

**Certificate of Compliance**

The undersigned, counsel of record for Plaintiffs M.S. and I.H., certifies that this brief contains 5,373 words, which complies with the word limit of L.R. 11-6.1

Dated: September 4, 2026

/s/- Kate McFarlane

Kate McFarlane